FRANCIS DUNLEVY and WILLIS ROBBINS, Administrators of ELIAS FASSETT, deceased, Respondents, *v.* SAMUEL W. TALLMADGE, impleaded with HENRY C. BOWERS *et al.* Appellants.

A court of equity does not intervene to enforce the payment of debts. It is only after the creditor has exhausted all the means in his power at law, that he is entitled to its aid to discover and apply the debtor's property to satisfy his claims.

A creditor at large has no *status* in equity; and the right of a judgment creditor to relief depends upon the fact of his having exhausted his legal remedies without avail.

An attempt to enforce the payment of the judgment out of the equitable interests of the debtor can only be made successfully where the creditor has acquired an equitable lien, by filing his bill, &c.

The issuing and return of an execution does not give the judgment creditor any lien upon the mere equities of the debtor.

THIS cause was heard on an appeal from the judgment of the Supreme Court, at General Term, affirming the decision of the Special Term. The facts sufficiently appear in . the opinion of this court, as delivered by WRIGHT, J.

WRIGHT, J. In the winter of 1852, the defendants, John J. Tallmadge, Ralph L. Howell and Henry C. Bowers, were copartners in the forwarding and transportation business on the canals of the State, having offices at Buffalo and at New York. The firm was the owner of a line of canal boats and other personal property. The business was conducted at Buffalo under the name of Bowers, Tallmadge & Co.; at New York under the name of R. L. Howell & Co.; and the firm had also a connection with one Isaacs, at Oswego, in the warehousing and shipping business, under the name of Bowers, Isaacs & Co. On the 30th January, 1852, Bowers sold to his copartner, John J. Tallmadge, his interest in all the firms, and on the 11th February, 1852, J. J. Tallmadge and Howell, the remaining partners, sold the property of the firms of Bowers, Tallmadge & Co. and R. Howell & Co., .including any interest which those firms might have in the

firm of Bowers, Isaacs & Co., to the defendant, Samuel W. Tallmadge. On the same day, Samuel W. Tallmadge conveyed one-half of his interest in the property sold to George W. Rogers for a valuable consideration. At this time, Fassett, in whose name as plaintiff the present suit is brought, was not a judgment creditor of any of these defendants individually, nor of the firms mentioned. It was averred in his complaint that he was a creditor at large of the defendants, but this allegation was put at issue, and there was no proof on the trial that they individually, or either of the firms, were his debtors at the time, except as it was alleged in the complaint constituting part of the roll of a judgment recovered against them by default in November, 1857.

On the 19th November, 1857, the plaintiff, who, it seems, was a resident of Ohio, recovered a judgment by default in this State for $443 against Henry C. Bowers, John J. Tallmadge and Ralph L. Howell, individually, and as such judgment creditor forthwith commenced the present action to have the sale of the 11th February, 1852, to the defendant, Samuel W. Tallmadge, of the property and effects of the firms of Bowers, Tallmadge & Co. and R. L. Howell & Co., adjudged null and void, and his judgment paid in full from such firm property or its proceeds; or to have such property and proceeds equitably distributed among the several creditors of Bowers, Tallmadge & Co. and R. L. Howell & Co., similarly situated with himself, who might come in and contribute to the expenses of the action. There was no allegation in the complaint of the issuing and return of any execution upon the judgment, and, in fact, none was issued until seven days after the suit was commenced, and which execution was returned *nulla bona* a month after the cause was at issue. Nor did the complaint allege that the defendants, who were the plaintiffs' debtors, were *individually* insolvent. It was an attempt, in brief, by a judgment creditor of some individual members of certain alleged insolvent copartnerships, to maintain a complaint in equity to adjudge an assignment of personal property null and void, without having, before the commencement of the action, first

exhausted his remedy at law by execution against his judgment debtors. The defendant, Samuel W. Tallmadge, by answer, set forth, as a distinct and specific defense, that the complaint did not state facts sufficient to constitute a cause of action, and on the trial, when the case was rested, moved for a nonsuit, which was denied, and an exception taken by him.

The purpose of the action is to reach the equitable assets of copartnerships in which the plaintiff's judgment debtors, or some of them, were concerned; and, to that end, the aid of a court of equity is invoked to set aside a sale and assignment of property held, in 1852, in copartnership, on the ground that such sale or assignment was in fraud of the partner-' ship creditors. The plaintiff asks equitable intervention, either as a judgment creditor or a creditor at large, and, in either attitude, is not entitled to the interposition or aid sought. A court of equity does not intervene to enforce the payment of debts (whether individual or partnership debts), and it is only after the creditor has taken and exhausted all the means in his power at law, that he will be entitled to its aid to discover and apply the debtor's property to satisfy his claims. A creditor at large has no *status* in the court; and the right of a judgment creditor to relief, depends upon the fact of having exhausted his legal remedies without being able to obtain satisfaction of his judgment. An execution must have issued on the judgment, and been returned unsatisfied. This is essential to the jurisdiction of the court, though there be nothing that can be reached by execution at law. When the attempt is to reach and enforce payment of the judgment out of the equitable interests of the judgment debtor, the creditor must have acquired an equitable lien, in this way, before Chancery can or will entertain jurisdiction. "In such cases," says the chancellor, in *Beck* v. *Burdett* (1 Paige, 305), "the actual return of the execution unsatisfied, is necessary to give the court jurisdiction to decree satisfaction out of the equitable property of the defendant. * * * In all these cases, when the property is not liable to an execution at law, the plaintiff obtains no lien upon the property

or fund by the issue or return of the execution. But it is the filing of the bill in equity, after the return of the execution at law, which gives to the plaintiff a specific lien." Nor is it any new rule, that the legal remedy must first be exhausted by the judgment creditor, before the aid of a court of equity can be invoked to reach assets not subject to his judgment lien. It was the settled doctrine of the Court of Chancery of this State (following the English Chancery), prior to the passage of the Revised Statutes, that before a judgment creditor was entitled to the aid of such court, against the goods and chattels of his debtor, or against any equitable interest of such debtor in them, he must first have taken out execution at law, and caused it to be levied or returned, so as thereby to show a failure of his remedy at law. (*Wiggins* v. *Armstrong*, 2 Johns. Ch., 144; *Hendricks* v. *Robinson*, id., 283; *Brinckeroff* v. *Brown*, 4 id., 671; *McDermott* v. *Strong*, id., 687; *Spader* v. *Davis*, 5 id., 280; *S. C.*, on error, 20 id., 554; *Beck* v. *Burdett*, 1 Paige, 305.) The legislature recognized and adopted the principle in the revision of the Statutes; the revisers, as they state, deeming it important (a doubt having been thrown out as to the correctness of the rule in *Donavan* v. *Finn*, 1 Hopk., 59) to settle the law and preserve the rule as laid down in *Spader's Case*. (2 R. S., 173, §§ 38, 39; Revisers' notes, 5 Edm. Stat. at Large, 405.) "This statute," says the chancellor, in *Child* v. *Brace* (4 Paige, 309), "was but declaratory of a principle which had before been adopted in the court;" and over and over again, since the revision, has the doctrine been reiterated, that before a judgment creditor can resort to a court of equity to discover and apply the property of his debtor to satisfy his judgment, he must have taken and exhausted all the means in his power at law to satisfy it; that it is only execution creditors at law that are entitled to its assistance, and that, although the debtor may have no property on which the execution could be levied, it is essential to the jurisdiction of the court to decree satisfaction of the judgment out of his equitable assets, that the execution should be issued and actually returned unsatisfied. (*Cassidy* v. *Meacham*, 3 Paige, 211;

*McElwain* v. *Willis*, id., 505; *S. C.*, in error, 9 Wend., 548; *Child* v. *Brace*, 4 Paige, 309; *Merchants' & Mechanics' Bank* v. *Griffith*, 10 id., 519; *Hastings* v. *Belknap*, 1 Denio, 191; *Newstadt* v. *Joel*, 2 Duer, 530; *Crippen* v. *Hudson*, 3 Kern., 161; *Forbes* v. *Logan*, 4 Bosw., 585; *Brooks* v. *Stern*, 19 How. Pr., 396; *Willetts* v. *Vandenburgh*, 34 Barb., 424.)

It is very clear, then, that the plaintiff, not having exhausted his remedy at law before commencing the action, by issuing and having returned unsatisfied, an execution against the property of his judgment debtors, had no *status* to entitle him to apply in equity by a general bill like the one in the present suit, to reach the equitable assets of copartnerships in which his judgment debtors are concerned. When the case closed, and the motion was made for a nonsuit, the plaintiff had neither alleged or proved a case entitling him to relief in equity; but, on the contrary, it had been shown conclusively, that what was essential to the jurisdiction of a court of equity to decree satisfaction of his judgment out of the equitable assets of his debtors, had not been done.

But the Special Term refused the nonsuit, sustaining the action upon a theory inconsistent with the complaint, and, as I think, upon grounds supported by no authority. It was treated as one by a creditor at large of certain insolvent firms (of which three of the defendants were members), in behalf of himself and other general creditors, calling upon the defendant, Samuel W. Tallmadge, to account as trustee for the property of such firms, and for a distribution of the fund amongst all the partnership creditors. Various reasons may be urged against the suit being sustained on any such theory. In the first place, no trust can be implied for the benefit of partnership creditors from the transaction of the 11th February, 1852. The pleadings admitted the firms to have been insolvent at the time of the sale to Tallmadge, but upon insolvency the property and effects of a general and ordinary partnership, are not a special trust fund for the payment of the partnership debts. It was not found as a fact that the sale of the partnership property was made with the fraudu-

lent intent of keeping it from the partnership creditors, but if it had been, I know of no principle of equity that would have converted the purchaser into a trustee of the property for their benefit. When an insolvent firm disposes of its property, it may be to keep it from the firm creditors, the assignee will not be deemed, in equity, the trustee of such creditors as to such property. They, as a class, have no lien upon it; it does not belong to them, and the transfer is not in fraud of their rights. *Second.* It was not shown that the, plaintiff was a creditor of the firms in February, 1852, when the sale of the firm property was made to Tallmadge, nor was it averred or proved that the members of the firms (who were the defendants, Bowers, J. J. Tallmadge and Howell) were, at the time of the pretended fraudulent transfer, *individually* insolvent, or were so when the action was commenced. The complaint alleged that the plaintiff was a creditor at large of the firms when such transfer was made, but the fact was put at issue, and there was no proof or finding on the subject. Yet, without averring the individual insolvency of the members of the firms, or showing that he was a partnership creditor at the time the property was assigned, the plaintiff was allowed to sustain an action to avoid the assignment on the ground that it was made in fraud of the partnership creditors, and for an account and distribution ratably among all the partnership creditors, of the assigned property or its proceeds. He brought his action as a judgment creditor of three persons, who were members of the firms in 1852, to obtain satisfaction of his judgment out of the equitable property of his debtors, and the court converted him into a *cestui que trust,* seeking an account and ratable distribution of a partnership trust fund. *Third.* But, conceding the plaintiff to have been a creditor at large, of the firms of Bowers, Tallmadge & Co., and R. L. Howell & Co., such creditor must have acquired a lien on the firm property by exhausting his legal remedy, or in some other way, before he could invoke the equitable powers of the court to control its administration. Insolvency of a general and ordinary partnership, where accompanied by a disposition of the firm property with the intent of keeping it

from creditors, gives the partnership creditors no lien; nor is the property, under such circumstances, converted into a trust fund for their benefit, nor will the alienee or purchaser be deemed in equity to hold it as their trustee. Joint creditors, it is true, under certain circumstances, have a right of priority of payment out of partnership property, in preference to the private creditors of any separate partner, but this equity is generally to be worked out through the medium of the partners. They have no lien upon partnership effects until such effects are taken into the custody of the law by due process. (*Ex parte Ruffin*, 6 Vesey, 119.) The plaintiff, in this case, had no lien, either legal or equitable, on the partnership effects of Bowers, Tallmadge & Co., or R. Howell & Co. Of course he had none at law, and could only acquire an equitable lien by proceeding to judgment and execution against the firm, and if the property sought was choses in action or equitable interests beyond the reach of the execution, to have the same returned unsatisfied. It is only after the creditor has completed his title at law, by judgment and execution, that he can question in equity the disposition of his debtor's property; and it is only by the actual return of the execution unsatisfied, that he acquires an equitable lien upon it, or a court of equity has power to intervene, to discover and apply it to satisfy his claim. Mere creditors at large cannot file a bill in equity to reach the assets of their debtors; and in this respect there is no distinction between simple contract creditors of an individual or a copartnership. (*McDermott* v. *Strong*, 4 Johns. Ch., 387; *Greenwood* v. *Bradford*, 8 Barb., 593; *Crippen* v. *Hudson*, 3 Kern., 167.)

The judgment of the Supreme Court should be reversed, and a new trial ordered.

Judgment reversed.