EVANS, Assignee, etc., Respondent, vs. LAUGHTON, Appellant.

*April 15 — June 1, 1887.*

ASSIGNMENT *for the benefit of creditors: Attachment: Creditor's bill: Fraudulent conveyance: Mortgage.*

1. Land conveyed by a deed, absolute in form but in fact intended as a security for money, is attachable in a suit against the grantor as mortgaged property; and a creditor who levies a valid attachment thereon acquires a specific lien at law, which entitles him, under sec. 3186, R. S., to maintain an action in equity, in aid of his attachment, to test the legality of such mortgage, without first obtaining judgment and issuing execution.

2. A deed of land, absolute in form, given by an insolvent to his daughter for an expressed consideration of $8,000, but in fact intended to secure advances of a less amount to be made by her for the benefit of the property, and to become absolute only in case the grantor should die without having repaid them, *held* to be in equity a mortgage; and it having been kept off the record so long as it could benefit the business of the grantor, and being evidently calculated and intended to hinder, delay and defraud creditors, *held* to be void against them, except to the extent that the grantee had made advances in good faith to the benefit of the property. ORTON, J., dissents.

APPEAL from the Circuit Court for *Grant* County.

The following statement of the case was made by Mr. Justice CASSODAY:

This action in equity was commenced by Isaac Hodges in his own name, February 13, 1884, in aid of an attachment issued in favor of said Hodges, and against N. H. and H. H. Virgin, and in part levied upon the lands described in a deed executed by N. H. Virgin and wife to the defendant, *Emma V. Laughton*, October 9, 1882, and recorded February 11, 1884. The complaint, after alleging the claim of Hodges against N. H. and H. H. Virgin, as set forth in the complaint in said attachment suit and said attachment, and the lien thereby acquired, as more fully appears in the statement of the case against N. H. and H. H.

Evans, Assignee, etc. vs. Laughton.

Virgin *(post,* p. 153), decided herewith, alleges, in effect, that N. H. and H. H. Virgin had no other lands or property out of which Hodges could realize his claim; that the lands described were all the lands owned by N. H. Virgin; that H. H. Virgin owned no lands liable to execution; that said deed to said *Emma* was fraudulent and void, and without any consideration whatever; that said *Emma* and said N. H. Virgin received and made said deed with the intent to defraud the creditors of said N. H. Virgin, and especially to defraud said Hodges; that October 9, 1882, N. H. Virgin was indebted to Hodges in the sum of over $40,000; that N. H. and H. H. Virgin had no other property besides that described in the deed, except personal property, not exceeding in value $2,500; that unless said deed should be set aside, Hodges would be unable to realize or collect the greater part of any judgment he recovered against N. H. and H. H. Virgin; that said *Emma* was the daughter of said N. H. Virgin, and had fraudulently conspired with him to cheat and defraud Hodges, by taking said fraudulent deed, and holding said lands as a secret trust for him; and it prays judgment that said deed be set aside and adjudged fraudulent and void; that the lands therein described be adjudged subject to the lien of said attachment, and for general relief.

The defendant answered, and admitted the pendency of the attachment suit, and the levy of the attachment on the land; that H. H. Virgin had no lands liable to execution; and that the defendant was the daughter of N. H. Virgin; but denied each and every other allegation of the complaint. Isaac Hodges, having made a voluntary assignment for the benefit of his creditors to *J. H. Evans,* the latter, as such assignee, was substituted for said Hodges as plaintiff herein.

The cause was tried before a referee, who made his report, which was slightly modified by the court, and upon a motion to confirm the report the court found, as matters of

fact, in effect, that in August, 1882, *Emma* visited her father in Platteville, and was then informed that his business affairs were in bad shape; that he was owing parties in Platteville large amounts; that the mill was making no profit, and had made none for a long time; that it was then arranged between her and her father that he should convey to her the mill property, and she advance money to put new machinery and steam-power into the mill, not exceeding in amount $6,000, and as security such deed was to recite a consideration of $8,000, and become absolute in the event of her father's death; that two deeds were drawn accordingly, the first by *Emma* herself, and the second by her sister Mary; that *Emma* was then instructed by her father not to record such deed to be so executed unless she had to; that it would hurt his business if she did record it,— to all of which *Emma* assented; that N. H. Virgin was then, to his knowledge, insolvent, and he continued to be insolvent, to his knowledge, from August 1, 1882, to February 12, 1884; that October 9, 1882, N. H. Virgin was individually indebted to the amount of $7,350, and the firm was then indebted to said bank in the sum of $39,127.39; that the total value of all the property and assets of the firm at that time did not exceed $17,700; that the debts of the firm continually and steadily increased down to February 8, 1884, whereof monthly balance-sheets were during the time furnished to the firm by said bank; that in August, 1882, *Emma* had notice of her father's indebtedness sufficient to put her upon inquiry as to his dealings with Hodges' bank, and as to the dealings of the firm with that bank, and as to their individual and joint liability to that bank, and that she had ample opportunity for making such inquiry; that *Emma* then paid her father $100 of such advance, but was otherwise not a creditor of his, and had supplied no machinery for the mill of any kind; that the deed so drawn by Mary was dated and executed by N. H. Virgin

and wife, and acknowledged before Mary's husband, and witnessed by them, as of October 9, 1882, and purported to convey to *Emma*, absolutely, about eighty-five and one-half acres of land, including the homestead of the grantors, a flouring-mill and water-power, all in or near Platteville, in consideration of $8,000, named in the deed as paid by *Emma*, the daughter of the grantors, who then and since resided in Chicago; that in December, 1882, *Emma* furnished some machinery for the mill, consisting of a steam-engine, costing $350, with boiler and appliances, and expenses afterwards supplied, amounting to $1,035; that such engine, being insufficient, was traded off, and in July, 1883, *Emma* furnished the mill with a new Atlas steam-engine, of forty horse-power, with boiler and appliances, at a cost of $1,313, making the total cost and expense of machinery so furnished by *Emma* $2,871; that from December, 1882, to March, 1884, she furnished for the personal comfort of her mother, and in the house, and in cash, $1,144; that February 8, 1884, the bank owned by Hodges at Platteville suspended payment, and he afterwards made a voluntary assignment of all his property and effects for the benefit of his creditors, to the plaintiff, under the statute; that February 9, 1884, a telegram was sent from Platteville to *Emma*, at Chicago, by her sister Mary, who drew up the deed, saying the Platteville bank had failed, and for her to "act accordingly;" that February 11, 1884, at 7 o'clock P. M., said deed to *Emma* was placed upon record in the office of the register of deeds for Grant county, by Mary's husband; that the sum of $2,000 more than was ever intended to be paid or advanced by *Emma* for or on the property so conveyed to her, was put into said conveyance as a part of its consideration, by and with the knowledge and assent of all the parties thereto, and that said conveyance was secretly made and secretly kept, intentionally by all the parties thereto, for the purpose of enabling the grantor to keep up his busi-

ness credit, and that such conveyance was made with intent to hinder, delay, and defraud the creditors of N. H. Virgin then existing, and more especially to hinder, delay, and defraud said Hodges, and was also received by *Emma* with the same intent.

And as conclusions of law the court found, in effect, that said deed to *Emma* (except as to the grantor's homestead therein conveyed) was fraudulent and void as to Hodges; and that the same should be set aside, and the record thereof discharged, and the lands therein described be subject to said attachment and judgment in favor of the plaintiff, in said suit against the firm; that the homestead be selected, and its boundaries determined, as directed; and as to that the deed stand as a valid conveyance. From the judgment entered thereon accordingly, and from the whole thereof, the defendant brings this appeal.

For the appellant there was a brief by *W. H. Beebe* and *Bushnell & Watkins*, and oral argument by *Mr. Beebe* and *Mr. Bushnell.* They argued that this action is in the nature of a creditor's bill, and such an action will not lie until the creditor has exhausted his remedy at law. *Hyde v. Chapman*, 33 Wis. 391; *Cornell v. Radway*, 22 id. 260; *Gates v. Boomer*, 17 id. 455; *Beck v. Burdett*, 1 Paige, 305; *Second Nat. Bank v. Farr*, 6 Cent. Rep. (N. J.) 321; Wait on Fraudulent Conveyances, §§ 73, 81, and cases cited. The action cannot be maintained under sec. 3186, R. S., because an attachment is not such a lien as is there contemplated; and, if a lien at all, the sheriff is the holder of it. Secs. 2730, 2736, 2741, R. S. Nor is this an action under that section, since it does not conform to the provisions thereof. The conveyance to defendant was valid. It was given to secure advances in order to improve the property, and without any intent to hinder, delay or defraud creditors. Equity will not cancel a deed as fraudulent except in a clear case, where it appears that the grantor made it with

such an intent; that the grantee had notice thereof; and that the creditor has been hindered, delayed or defrauded thereby. Bispham's Equity (3d ed.), sec. 475; 2 Story, Eq. Jur. (13th ed.), secs. 693–696; *Harding v. Handy*, 11 Wheat. 103.

For the respondent there was a brief by *Carter & Cleary*, and oral argument by *Mr. Carter*. They argued that the deed was taken by the defendant with knowledge of the financial condition of her father; was kept off the record by agreement in order to enable him to obtain credit, and was put on in haste when it would no longer serve that purpose; appeared on its face to have been just executed, though pre-dated; and was fraudulent. *Shand v. Hanley*, 71 N. Y. 319; 1 Story, Eq. §§ 369, 390; 3 Washburn, Real Prop. 296, 297; *Hawley v. Sackett*, 3 Hun, 605. The same rule applies whether it was intended as a deed or a mortgage. *Manseau v. Mueller*, 45 Wis. 430; *Avery v. Johann*, 27 id. 249; *Haney v. Nugent*, 13 id. 283; *Gardinier v. Otis*, 13 id. 460; *First Nat. Bk. v. Bertschy*, 52 id. 438; *Sutton v. Hasey*, 58 id. 556; *Fisher v. Shelver*, 53 id. 498; *Hamlin v. Wright*, 26 id. 50; *Hopkins v. Langton*, 30 id. 379; *Butts v. Peacock*, 23 id. 359; *Wood v. Goff*, 7 Bush (Ky.), 59; *Chapel v. Clapp*, 29 Iowa, 191; *Thompson v. Bickford*, 19 Minn. 17; sec. 2320, R. S. An attachment duly levied upon land is, under sec. 2737, R. S., a *lien thereon*, which gives the plaintiff a right of action under sec. 3186. *Robertson v. Kinkhead*, 26 Wis. 560; *Carney v. Emmons*, 9 id. 114; *Milwaukee Iron Co. v. Hubbard*, 29 id. 51; *Wier v. Simmons*, 55 id. 645; *Evans v. Ely*, id. 194; *Roe v. Lincoln Co.* 56 id. 71.

CASSODAY, J. We have just determined, in the suit against the firm, that the attachment mentioned was properly sustained upon the traverse, as against the separate property of N. H. Virgin. As there stated, it was levied upon the eighty-five and one-half acres of land in question

as the separate property of N. H. Virgin, February 12, 1884. The title to this land at the time was, apparently, in the defendant, *Emma V. Laughton*, daughter of N. H. Virgin, under a deed to her from her father and mother, dated October 9, 1882, and recorded February 11, 1884. The next day, after having commenced the attachment suit, and acquired such levy, Hodges commenced this suit in equity in his own name, to have said deed set aside and adjudged fraudulent and void as against Hodges, and to subject the land to such levy and lien in aid of such attachment. The question presented is whether this bill in equity can be maintained for such a purpose upon the facts found as stated, and which seem to be supported by the evidence. It is urged by the learned counsel for the defendant that this is in the nature of a creditor's bill, and hence, as a condition of its maintenance, Hodges should first have obtained judgment, issued execution thereon, and then waited until the same had been returned unsatisfied, as required by sec. 3029, R. S. In other words, that such a bill cannot be maintained by a creditor at large, but only one who has first exhausted his remedy at law. Had *Emma* acquired an absolute, indefeasible title in fee-simple to the land October 9, 1882, so as to have prevented the subsequent attachment against the property of N. H. Virgin from becoming a specific lien *at law* thereon, then there would have been force in the argument of counsel, and the application of *Hyde v. Chapman*, 33 Wis. 391, cited by him. But even had the deed from N. H. Virgin and wife to *Emma* been intended as an absolute conveyance, and hence binding upon the grantors, yet if it was in fact made by them, and received by *Emma* with the intent to hinder, delay, and defraud the creditors of N. H. Virgin, including Hodges, then there are certainly plenty of authorities holding that, as such deed would in that event have been void as against such creditors, including Hodges, the latter would have been at liberty, notwithstanding such

prior conveyance, to seize the land on execution or attachment as the property of N. H. Virgin, and would thereby have acquired a specific lien *at law* thereon. Sec. 2320, R. S.; *Eastman v. Schettler*, 13 Wis. 324; and cases cited in the note to *Yocum v. Bullit*, 17 Am. Dec. 184–187; *Wadsworth v. Schisselbauer*, 32 Minn. 84.

But this precise question was not discussed, and the view we have taken of the case makes it unnecessary to decide it. Under the findings of the court, we are constrained to hold that, notwithstanding the deed was absolute in form, yet that it was not intended by N. H. Virgin nor *Emma* to be anything more than security for future advances, not exceeding in amount $6,000, and to become absolute only in the event of his death. The arrangement was, in substance and effect, that, as between the parties to it, the deed should be regarded as a mortgage for future advances not exceeding the amount named, during the life of N. H. Virgin; but, in case he failed to repay such advances as might be so made during his life, then on his death the deed should be regarded as an absolute conveyance. Such an arrangement, with the understanding not to record the deed, as stated, was well calulated to decoy, and then hinder, delay, and defraud creditors, and yet reserve to the grantor the privilege of reclaiming the land on redemption, or asserting the absoluteness of the deed, as might best suit the future interests of the parties to it. As the deed was given and received with intent to secure such future advances, it must, under the frequent adjudications of this court, and as between the parties to it, be regarded in equity as a mortgage. *Schreiber v. Le Clair*, 66 Wis. 579, and cases there cited. Being a mere mortgage, as between the parties, *Emma* took the deed as a mere mortgagee, having no other rights or remedies than the law accords to mortgagees. *Ibid.*

Since, as between the parties, the grantee was a mere mortgagee, it necessarily follows that the grantor, N. H.

Virgin, upon the execution and delivery of the deed, became and continued to be a mere mortgagor, with all the rights and subject to all the liabilities of a mortgagor.    In other words, as between the parties, he must be regarded as continuing to be the owner of the land at the time Hodges' attachment was levied upon it.    There is no question but what all the necessary steps for perfecting the attachment were duly taken, and the copy of the writ and the requisite certificate duly filed in the register's office as required.    These things being so, the real estate in question, and the interest of N. H. Virgin therein so attached, exclusive of the homestead, thereby became bound, and the attachment a specific lien thereon *at law,* from the time of so perfecting the same.    Sec. 2737, R. S.

This being so, the case comes squarely within the rule sanctioned in *Cornell v. Radway,* 22 Wis. 260; *Galloway v. Hamilton,* 68 Wis. 651; *Wadsworth v. Schisselbauer,* 32 Minn. 84; *Hahn v. Salmon,* 20 Fed. Rep. 801; *Dawson v. Sims,* 14 Ore. 561.    In each of the last two cases cited is a well-considered opinion, sustaining the right of a creditor at large to maintain a bill in equity in aid of an attachment, the one by DEADY, J., of the federal court, and the other by LORD, C. J., of the supreme court of Oregon.    As there indicated, the authorities to that effect are not all harmonious.    See the cases classified in the note to 3 Pom. Eq. Jur. § 1415.    There can be no question, however, in this state, for the late Revision gives to every "owner and holder of *any lien* or incumbrance on land   .   .   .   the same right of action as the owner in fee in possession, to test the legality and validity of any other claim, lien, or incumbrance on such land, or any part thereof."    Sec. 3186, R. S.    It follows that Hodges, having by his attachment acquired a specific lien upon the land in question, had the right to maintain this bill in equity to test the validity of the deed to *Emma,* which turns out to be a mere mortgage, in aid of his

attachment.   For the reasons given in the case against the firm, the rights thus acquired by Hodges were, by virtue of his assignment, and the substitution made by order of the court, duly entered, transferred to the plaintiff.   But notwithstanding such deed was made with intent to hinder, delay, and defraud the creditors of N. H. Virgin, including Hodges, yet, as it was, in effect, a mere mortgage for future advances, and as a large share of such advances were subsequently made in good faith, to increase the value of the property now sought to be reached, and was in good faith so used, the court has concluded to hold that such conveyance is a valid mortgage to the extent that such property was so benefited by such advances, to wit, to the amount of $2,871, with interest thereon from the time of the rendition of the judgment herein, June 22, 1886, but for no further or greater amount; but that said deed, except as to such homestead, is in all other respects held to be fraudulent and void as to Hodges, and the plaintiff as his assignee.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded, with directions to enter judgment in favor of the plaintiff, and against the defendant, in accordance with this opinion, but without costs to either party, except the clerk's fees are to be paid by the plaintiff.

ORTON, J., dissents.   See dissenting opinion, *post*, p. 163.

See notes to this case in 33 N. W. Rep. 573, 574.— REP.