Gilbert vs. Stockman and others.

---

GILBERT, Appellant, vs. STOCKMAN and others, Respondents.

*February 26 — March 22, 1892.*

*Fraudulent conveyance: Action by judgment creditor to set aside: Lien of judgment: Return of execution.*

An action by a judgment creditor to set aside a conveyance of land made by the debtor before the docketing of the judgment, and to subject the land to the lien of the judgment, on the ground that such conveyance was made without consideration and with intent to defraud creditors, including the plaintiff, cannot be maintained unless an execution on the judgment has been issued and returned unsatisfied in whole or in part. WINSLOW, J., and PINNEY, J., dissent.

Gilbert vs. Stockman and others.

APPEAL from the Circuit Court for *St. Croix* County.
This is a bill in equity to set aside a deed executed
by the defendants *H. D. Stockman* and wife July 3,
1890, whereby they conveyed to the defendant *Campbell
Fletcher* the forty acres of land described, in St. Croix
county, which deed recited a consideration of $500 and
was recorded in the register's office of St. Croix county July
5, 1890, on the ground that said deed was given without
consideration and with the intent to hinder, delay, cheat,
and defraud the creditors of the said *H. D. Stockman*, in-
cluding the plaintiff. The complaint alleged the facts men-
tioned more in detail, and also that said *Fletcher* was the
father-in-law of said *Stockman*, and never paid any consid-
eration for said premises, and did not buy the same in good
faith, and also alleged, in effect, that November 11, 1890,
the plaintiff recovered a judgment against said *Stockman*
for $105.19 in the circuit court for St. Croix county, and
which was docketed therein on that day and still re-
mained unpaid and unsatisfied; that November 28, 1890,
the plaintiff also caused to be docketed in the circuit court
for St. Croix county another judgment, for $107.75, which
had been previously recovered in this court; that the debts
upon which said respective judgments were recovered ac-
crued long prior to July 3, 1890. The prayer was that said
deed be set aside and declared null and void, and said judg-
ments be declared superior liens upon said premises, and
that the same be sold on execution to satisfy the same, and
for general relief.

To that complaint the defendants demurred on the
ground that it did not state facts sufficient to constitute a
cause of action. From the order sustaining that demurrer
the plaintiff appeals.

For the appellant there was a brief signed by *Henry
Anderson* and *Spooner & Taylor*, attorneys, and a separate
brief signed by *Armstrong Taylor* and *Henry Anderson*,

Gilbert vs. Stockman and others.

attorneys, and *Richmond & Smith*, of counsel; and the cause was argued orally by *J. B. Smith*.

*R. D. Whitford*, for the respondents.

CASSODAY, J. The deed from the judgment debtor to his father-in-law was executed and recorded more than four months prior to the time when either of the plaintiff's judgments was docketed in St. Croix county, in which the land in question is situated. There is no claim that any execution was ever levied upon the land, or even issued upon either of those judgments. Equitable aid is invoked on the ground that the deed was given without consideration by an insolvent debtor, with the intent to hinder, delay, or defraud his creditors, including the plaintiff. The question is whether it can be granted upon such a showing.

There is certainly a great diversity of opinion in the several states as to the question suggested, depending, it is believed, very much upon local statutes. It seems to be conceded as a general rule that whenever the nature of the property or thing in action is such, or the same is held in trust for the insolvent judgment debtor so, that it cannot be reached at law by levy and sale on execution, then the execution must be returned unsatisfied in whole or in part before a bill in equity, or what is usually known as a "creditor's bill," can be maintained to reach the same. In such case the equitable lien is created, not by the judgment and execution, but by the filing of the bill and the service of process. *Dunlevy v. Tallmadge*, 32 N. Y. 457. This rule, requiring the return of an execution unsatisfied, is embodied in our statute. Sec. 3029, R. S.[1]

[1] Sec. 3029, R. S., provides that "whenever any execution against the property of any judgment debtor shall have been issued upon a judgment for the payment of money, and shall have been returned unsatisfied in whole or in part, the judgment creditor may commence an action against such judgment debtor and any other person to compel the discovery of.

Formerly it was held in New York that where an insolvent debtor bought and paid for land with his own money, and took the title in the name of his wife or another with the intent to hinder, delay, or defraud his creditors, such land could nevertheless be reached and sold on execution against the debtor. *Wait v. Day*, 4 Denio, 439. But that case was expressly overruled in *Garfield v. Hatmaker*, 15 N. Y. 475, in an able opinion by COMSTOCK, J., on the ground that the then recently revised statutes of that state had abolished the uses and trusts in favor of the debtor so paying the consideration which was implied at common law, and hence left in such debtor no legal or equitable estate to which such execution at law could attach. This ruling has become firmly established by repeated adjudications in New York. *Wood v. Robinson*, 22 N. Y. 564; *McCartney v. Bostwick*, 32 N. Y. 53; *Ocean Nat. Bank v. Olcott*, 46 N. Y. 17; *Everett v. Everett*, 48 N. Y. 223; *Estes v. Wilcox*, 67 N. Y. 264; *Underwood v. Sutcliffe*, 77 N. Y. 58. We have the same statutes in these respects, and have followed the same construction. Sec. 2077, R. S.; *Hyde v. Chapman*, 33 Wis. 391; *Kluender v. Fenske*, 53 Wis. 122; *Pavey v. Am. Ins. Co.* 56 Wis. 224; *Week v. Bosworth*, 61 Wis. 85; *Cerney v. Pawlot*, 66 Wis. 262; *Skinner v. James*, 69 Wis. 611; *Campbell v. Campbell*, 70 Wis. 311; *Watters v. McGuigan*, 72 Wis. 155; *Gettelmann v. Gitz*, 78 Wis. 439. To the same effect are *Griffin v. Nitcher*, 57 Me. 270; *Hartshorn v. Eames*, 31 Me. 93.

The difference between an insolvent debtor thus purchasing land in the name of another with the intent to hinder, delay, or defraud his creditors, or the making of a conveyance from himself directly to such third person with the same intent, is, to say the most, very slight, since the pur-

any property or thing in action belonging to such judgment debtor, and of any property, money, or thing in action due or held in trust for him," etc.— REP.

Gilbert vs. Stockman and others.

pose and effect in each case is substantially the same; and yet it is firmly established by the authorities cited that if such insolvent debtor purchases land in the name of another with the intent to hinder, delay, or defraud his creditors, such land cannot be reached by execution nor in equity until the execution has been issued and returned unsatisfied in whole or in part.

Such return can only be dispensed with where the judgment creditor has first obtained a valid lien at law upon the land. What are the essentials of such a lien? Originally, at common law, a judgment was not, strictly speaking, a lien upon real estate. Thus Lord Chancellor COTTENHAM said: "It is not correct to say that according to the usual acceptation of the term the creditor obtains a lien by virtue of his judgment. . . . What gives a judgment creditor a right against the estate is only the act of Parliament; for independently of that he has none. The act of Parliament gives him, if he pleases, an option by the writ of *elegit*,— the very name implying that it is an option,— which if he exercises, he is entitled to have a writ directed to the sheriff to put him in possession of a moiety of the lands. The effect of the proceeding under the writ is to give to the creditor a legal title which, if no impediment prevent him, he may enforce at law by ejectment." Then, after indicating that equity would aid in the removal of such impediment, he said: "Suppose he [the judgment creditor] never sues out the writ, and never, therefore, exercises his option. Is this court to give him the benefit of a lien to which he has never chosen to assert his right? The reasoning would seem very strong that as this court is lending its aid to the legal right the party must have previously armed himself with that which constitutes his legal right, and that which constitutes the legal right is the writ." The act of Parliament thus referred to was 13 Edw. I. ch. 18, which declared, in effect, that upon the

recovery of a judgment, "it shall be from henceforth in the *election* of him that sueth for such debt or damages to have a writ of *fieri facias* unto the sheriff for to levy the debt of the lands and goods," etc. At common law such writ was to be sued out within a year and a day after the judgment was entered, otherwise it would be deemed satisfied, unless revived. 3 Bl. Comm. 421. Such English rule became operative as a part of the common law of this country, except in so far as modified by local statutes. *Burton v. Smith*, 13 Pet. 479; *Spaulding v. C. & N. W. R. Co.* 30 Wis. 110. "It is not understood," said Mr. Justice STORY, "that a general lien by judgment on land constitutes *per se* a property or right in land itself. It only confers a right to levy on the same to the exclusion of other adverse interests subsequent to the judgment; and when the levy is actually made on the same the title of the creditor, for this purpose, relates back to the time of his judgment, so as to cut out intermediate incumbrances." *Conard v. Atlantic Ins. Co.* 1 Pet. 443. Our statute makes a judgment, when docketed as required, a lien for the period of ten years on the real property not exempt which the debtor "*may have at the time of docketing thereof* in the county in which such real estate is situated, or which he shall acquire at any time thereafter within said period' of ten years." Sec. 2902, R. S.

The contention is that every conveyance made with the intent to hinder, delay, or defraud creditors is made void, as against the person so hindered, delayed, or defrauded, by sec. 2320, R. S., and hence that the deed in question, although made and recorded long prior to the docketing of either of the plaintiff's judgments, was nevertheless utterly void and of no effect as against creditors, including the plaintiff. But such claim is obviously subject to several qualifications. No one would seriously contend, under the statutes of this state, that the validity of such deed could be questioned by a mere creditor at large, or by a mere foreign

judgment creditor, or by a judgment creditor whose judgment is docketed merely in some other county than the one in which the land is situated, and upon which no execution has been issued, nor even a judgment recovered in the county where the land is situated, unless the same should first be also docketed in that county. In other words, if the plaintiff's judgments are liens upon the land in question it is by virtue of the mere clerical act of docketing the judgments in St. Croix county as required by statute. Secs. 2899–2901, R. S. The mere clerical act of docketing one judgment is the same as docketing any other judgment, and yet the one may be based upon a debt contracted prior to such fraudulent conveyance, and the other upon a debt contracted after such conveyance; and hence the one might by a creditor's bill, or bill in aid of an execution, be successfully enforced against such conveyance, while the other could not,— depending upon facts outside of such docket.

Again, the deed in question was valid between the parties and their personal representatives. *Clemens v. Clemens,* 28 Wis. 637; *Dietrich v. Koch,* 35 Wis. 618; *Mehlhop v. Pettibone,* 54 Wis. 657; *Davy v. Kelley,* 66 Wis. 452. By that deed the judgment debtor absolutely parted with any and all right, title, and interest in the land, beyond any reclaiming, whether in equity or at law, long before such docketing. And yet we are asked to say that such docketing of the judgments made them liens upon the land at law, notwithstanding the statute only makes a judgment a lien upon the land owned by the judgment debtor at the time of docketing the same or thereafter, and not upon lands in which he then had no interest whatever. Besides, if such docketing made the judgments liens at law, then such lien would be absolute, and the fraudulent grantee could not thereafter convey the same, even to a *bona fide* purchaser for full value.

The several sections of our statutes referred to are each

taken substantially, if not literally, from the corresponding sections of the New York statutes. Under such statutes the New York courts have frequently held that, to enable a judgment creditor to obtain the aid of a court of equity, it is essential either that an execution be first issued and returned unsatisfied in whole or in part, or that the action be brought in aid of an execution then outstanding. *Adsit v. Butler,* 87 N. Y. 585; *McCullough v. Colby,* 5 Bosw. 477; *Geery v. Geery,* 63 N. Y. 252; *Fox v. Moyer,* 54 N. Y. 125–129; *Dunlevy v. Tallmadge,* 32 N. Y. 457; *Shaw v. Dwight,* 27 N. Y. 244; *North Am. F. Ins. Co. v. Graham,* 5 Sandf. 197; *Lichtenberg v. Herdtfelter,* 33 Hun, 57; *Hadden v. Spader,* 20 Johns. 554. In *Adsit v. Butler,* 87 N. Y. 585, the facts were substantially the same as in the case at bar. The complaint alleged, in effect, the recovery of two judgments against Rosekrans in 1875; that he had previously conveyed the premises described to one Blackmore, who, by the procurement of Rosekrans, conveyed the same to the defendant's testator, the original defendant; that Rosekrans was insolvent; that such conveyances were without consideration, made, and in pursuance of a scheme to which said testator was a party, to hinder, delay, and defraud the creditors of Rosekrans, who died in 1877. The defendant demurred on the ground that the complaint did not state a cause of action. The court sustained the demurrer, and judgment was entered thereon accordingly. In the court of appeals it was held that "in an action by a judgment creditor to set aside, on the ground of fraud, a conveyance of real estate by the debtor, the complaint must allege the issuing of an execution upon the judgment. The return of an execution unsatisfied is essential to give the court jurisdiction, or the action must be brought in aid of an execution then outstanding." This is on the theory that before a court of equity will lend its aid in such a case the judgment creditor must have " exhausted all the reme-

Gilbert vs. Stockman and others.

dies known to the law to obtain satisfaction on the judgment." In that state an execution becomes a general lien on the debtor's personal property as soon as placed in the hands of the sheriff. Nevertheless, it must either be returned unsatisfied, or levied upon specific personal property, before the aid of equity can be successfully invoked.

There are adjudications in other states to the same effect as in New York. Thus in Maine it has been held that where a bill in equity alleges that the plaintiff's judgment debtor had conveyed his real and personal estate to others in fraud of his creditors, and seeks relief for that cause, if the bill does not also allege that the plaintiff has made a levy upon the land, or an attempt to seize and sell the goods, or that an officer has returned the execution without being able to obtain satisfaction, or such facts as to show the plaintiff has exhausted his remedy at law, the bill will be dismissed on demurrer thereto for want of jurisdiction. *Webster v. Clark*, 25 Me. 313; *Dana v. Haskell*, 41 Me. 25. So in Vermont it has been held that " a court of chancery will not ordinarily interpose to aid a creditor in reaching the real estate of his debtor, unless he has perfected his claim so far as he can at law by obtaining judgment and levying upon the estate." *Rice v. Barnard*, 20 Vt. 479. So, in a case from Nebraska, it was held in *Jones v. Green*, 1 Wall. 330, that " a bill in equity will not lie on behalf of judgment creditors to subject real property of their debtor, held by a third party upon a secret trust for him, to the satisfaction of the judgment, until an attempt has been made for their collection at law by the issue of execution thereon." The opinion in that case is by Mr. Justice FIELD, and is based upon earlier New York cases.

There are undoubtedly decisions in some states which sustain the contention of the learned counsel for the plaintiff. In fact, some of them go to the extent of sustaining a creditor's bill by a mere creditor at large. But the de-

·cisions in this state, so far as they have gone, are believed
to be in harmony with the rules thus maintained in New
York, from which state we borrowed our statutes on the
subject. In some of these cases the execution had been
issued and returned unsatisfied, and thereupon a regular
creditor's bill was filed to set aside a prior conveyance; and
hence the question here presented did not arise. *Gates v.
Boomer*, 17 Wis. 455; *Winslow v.· Dousman*, 18 Wis. 456;
*Meissner v. Meissner*, 68 Wis. 343; *Williams v. Sexton*, 19
Wis. 42; *Daskam v. Neff*, 79 Wis. 161. In *Eastman v.
Schettler*, 13 Wis. 324, the debtor conveyed the land with
the intent to hinder, delay, and defraud his creditors, pend-
ing a suit against him. Upon the recovery and docketing
of the judgment in the action thus pending against him, an
execution was issued thereon, and the land so conveyed
levied upon and sold to the plaintiff, who, upon receiving
the sheriff's deed upon such sale, brought an action at law
to recover the land. On the trial the court excluded all evi-
dence of title in the judgment debtor, and the judgment roll
in the action against him; and such ruling was held to be
error. It must be conceded that had the judgment creditor,
prior to such sale, brought an action in equity in aid of
such execution and levy, the court would, upon the princi-
ples of that decision, necessarily have held such action main-
tainable. But that case goes to the extreme limit of any
adjudication in this court, as will be observed by a careful
examination of the cases cited. *Cornell v. Radway*, 22
Wis. 260; *Smith v. Weeks*, 60 Wis. 104; *Mason v. Pierron*,
63 Wis. 246; *Galloway v. Hamilton*, 68 Wis. 651; *Evans v.
Laughton*, 69 Wis. 138; *Ahlhauser v.·Doud*, 74 Wis. 400;
*Woodward v. Hall*, 75 Wis. 406. In *Cornell v. Radway*,
*supra*, the judgment·debtor had title and possession of the
land before and at the time of the docketing of the judgment
against him, and never parted with the same; and besides,
an execution had been issued thereon and levied upon the

land, and the suit was in aid of such execution and levy. *Galloway v. Hamilton, supra,* was to the same effect. In the case at bar, no execution was ever issued, much less levied upon the land in question or returned unsatisfied. Such being the fact, the demurrer was properly sustained.

*By the Court.*— The order of the circuit court is affirmed.

WINSLOW, J., dissents.

PINNEY, J. I cannot agree to the judgment of the court in this case. The complaint states, in substance, that the conveyance here assailed by the plaintiff as a creditor by two judgments duly recovered and docketed against the grantor, was without any consideration and was made for the purpose of putting the title of the property in question in *Fletcher,* his codefendant and father-in-law, so as to cheat, hinder, and defraud his creditors, including the plaintiff; that at the date of the deed *Stockman* owed the plaintiff the debts for which he subsequently recovered his judgments, and is insolvent and has no other property than the premises described from which the plaintiff can realize or collect the amount of them; that unless this fraudulent deed is set aside and said premises are declared to be subject to the lien of said judgments the plaintiff will be greatly and irretrievably damaged and will be deprived of his security for their payment and of all means of collecting and enforcing payment of the same. The complaint prays that the deed be adjudged void and the judgments liens on the land embraced in it; that it be sold on execution to satisfy the judgments; and for general relief. All these matters are sufficiently pleaded, and are admitted by the demurrer. The action is between the party defrauded and the authors of the fraud, and, as against subsequent *bona fide* purchasers, it may be conceded that these judgments would not be liens; but the rights of subsequent

*bona fide* purchasers for value from the fraudulent grantee, if any such there be, are not involved. The parties to a transaction such as is set out in the complaint, and which in judgment of law is a gross fraud, clearly cannot be allowed, even indirectly, the protection or favor which the law in such cases gives only to honest and innocent transactions. The case, in short, is that the title of the defendant is fraudulent, and the plaintiff's only resource to collect the judgment is the particular property sought to be reached by this action, and so he has no remedy at law, if in absence of such is material.

It is an old and well-recognized maxim that the law requires nothing in vain. Under circumstances such as these, surely there was no necessity that executions should be issued on the judgments and placed in the hands of the sheriff, or levied on the land, or that the executions should have been returned "No property found," to enable the plaintiff to seek the aid of a court of equity in a clear case of actual, positive fraud, admitted on the record, and for which the plaintiff actually has no adequate remedy save the one sought in this action. Fraud and injury to the party complaining have been held, from the earliest period, good ground for the interference of a court of equity. The sole purpose of an execution returned unsatisfied is to establish what the defendants admit by their demurrer, namely, the entire absence of any remedy at law. To allow these defendants to take refuge behind a mere idle formality, such as the want of an execution, under these circumstances, seems to me to savor overmuch of mere technicality and particularity, tending to delay and embarrass, rather than to promote, the ends of justice.

As between the parties to this action, the deed from *Stockman* to his father-in-law, made without consideration and for a confessedly fraudulent purpose, is absolutely void whenever and wherever it comes in question, and so, too,

as to all parties claiming under it, even for value, with notice of the fraud. The judgments were clearly liens on the lands, which could be avoided only by a conveyance by the fraudulent grantee to a purchaser for value without notice. More than thirty years ago, in *Eastman v. Schettler*, 13 Wis. 325, it was decided by this court that whether a judgment is a lien on land previously conveyed by the judgment debtor depends upon whether the conveyance was fraudulent or not as to creditors. In that case the court speaking to this point by COLE, J., said: " The appellant contends that this conveyance was made with intent to hinder and delay creditors. That is his case. If he establishes that proposition, and shows that the conveyance *was fraudulent and void as to creditors, then the judgment became a lien.*" The authority of this case has not been heretofore denied, and it has been repeatedly cited with approbation in courts of last resort in other states, and by approved textbook writers, as sustaining the proposition here in question. Bump, in his work on Fraudulent Conveyances, p. 474, states the rule to be that, " if the creditors obtain judgments against the debtor *after* the transfer, they acquire liens upon his property wherever the same are given by law, according to the date of their respective judgments, in the same manner precisely as if no transfer had been made; for the transfer is a nullity as to them, and the legal as well as the equitable title remains in the debtor for the purpose of satisfying his debts." To the same effect is 2 Freem. Judgm. § 350, and cases cited. There is abundant authority in support of this proposition. *Jacoby's Appeal,* 67 Pa. St. 434; *Henderson v. Henderson,* 133 Pa. St. 399, 411, 412. In *Ahlhauser v. Doud,* 74 Wis. 409, 410, it was held that a deed fraudulent as against creditors was no obstacle to the lien of a subsequent judgment and execution attaching to the premises, and that *Chautauque Co. Bank v. Risley,* 19 N. Y. 369, 375, " clearly supports the doctrine of the

judgment creditor's lien upon the real estate of the debtor, notwithstanding the debtor has fraudulently conveyed away such real estate before the judgment was obtained;" and in *Cornell v. Radway*, 22 Wis. 260, which was, like the last case, a suit in aid of execution, it was said: "As the judgment of the plaintiff is by statute a specific lien upon the land *without the issue or levy* of an execution, it would seem that the plaintiff is entitled to the aid of the court whether execution has been issued and returned unsatisfied or not."

Whether a judgment is a lien on certain specified real estate does not always depend upon the state of title as shown by the record, but in many cases depends upon matter resting *in pais*, such as unrecorded conveyances, the passing of title by descent, whether the legal title held by the judgment debtor is in trust for others, and other like circumstances affecting the title; and it may as well depend upon whether a certain deed is fraudulent and void as to creditors of the grantor as any other fact or circumstance. Equitable rights and interests in lands are subject to the lien of judgments against the holder of them. *Van Camp v. Peerenboom*, 14 Wis. 68, 69. They are within the meaning and construction given by our statute to the word "land." The fact that the holder of the legal title might convey it away in fraud of the holder of such rights to a purchaser for value and without notice of them, has never been considered good ground for denying the existence of such a lien, except as to such purchasers; nor is there any reason for denying, upon that ground, that a judgment against the grantor in a deed of lands conveyed away in fraud of creditors is a lien on such lands as against the parties to the fraud and persons purchasing with notice of it, merely because the lien may be defeated before it is enforced, by a conveyance to a *bona fide* purchaser. Under the statute, it is not the execution, but the judgment duly docketed, that creates the lien. The statute of 13 Edw. I.

(A. D. 1285), providing for proceedings by *elegit*, the usual method in England, until 1838, of obtaining satisfaction out of the lands of judgment debtors, is almost unknown to American jurisprudence, save in Virginia, and to a qualified and limited extent in Delaware and Florida. Freeman, Executions, § 370. It was not suited to the circumstances and condition of the colonies, as most of the lands were wild and uncultivated and would yield no rents and profits upon possession of a moiety delivered to the creditor, and as to those occupied and cultivated. it would have been regarded as harsh in the extreme to expel the early settlers, who might have judgments rendered against them, from a moiety of their limited fields. It soon became the settled policy of the country to permit the judgment debtor to retain possession of lands sold on execution until a deed should issue; and as early as A. D. 1700 laws were passed in some of the colonies, and afterwards in nearly all others, making judgments a lien on lands, and providing a method of subjecting lands to execution wholly in conflict with the principles and provisions of the ancient English statute cited in the opinion of the court; so that it was repealed, if ever in force, by implication in all the states, with the exceptions above stated. In Wisconsin there was clearly an implied repeal as early as April 12, 1827, by the Michigan statute of that date (Terr. Stats. Mich. 226–240), which became the law of Wisconsin territory when it was created, and similar statutes have been in force in Wisconsin ever since. In 1732, by Stat. 5 George II. ch. 7, lands within the English colonies were made chargeable with debts and subject to like process of execution as personal estate, though that statute was not the entire origin of the practice. 4 Kent, Comm. *429, *430.

Neither of these English statutes was ever in force in Wisconsin. The territory of Michigan, of which what was afterwards Wisconsin territory became a part when Illi-

nois was admitted into the Union in 1818, was created January 11, 1805; and by act of Michigan territory of 1810 (Laws of Mich. 1833, p. 563) it was provided that "no act of the Parliament of England, and no act of the Parliament of Great Britain, shall have any force within the territory of Michigan." After the territory of which Wisconsin territory was formed in 1836 had been attached to and made a part of Michigan territory, the act of 1810 above quoted was declared to be still in force in said territory, by act of May 8, 1821. Laws of Mich. 1820, p. 459. The doubts expressed in *O'Ferrall v. Simplot*, 4 Iowa, 381, supposed to have influenced the court in *Coburn v. Harvey*, 18 Wis. 150, as expressed in *Webster v. Morris*, 66 Wis. 376, based on the fact that the terms of the territorial statute of Wisconsin do not include *English* statutes as well as statutes of Great Britain, were, it seems, without any real foundation. It is true that the Michigan act of repeal was itself repealed by the Territorial Statutes of Wisconsin of 1839, p. 404, sec. 1; but by sec. 2 it was provided that "the repeal of any act by any law of the territory shall never be construed to revive any act previously in force, unless such repealing act shall contain an express provision that any such repealed act shall be thereby revived and put in force;" so that if the statute of 13 Edw. I. was ever in force in the territory of which Wisconsin was formed, it was expressly repealed and never after revived; and this view is sustained in *Crawford v. Chapman*, 17 Ohio, 449; *Perin v. Carey*, 24 How. 466, 500, 501; *Stevenson v. Cloud*, 5 Blackf. 92; *McCord v. Ochiltree*, 8 Blackf. 15. It is plain, therefore, that the statute of 13 Edw. I. was never in force in Wisconsin. In dealing with lands upon execution as with personal estate, the courts readily came to hold, in states where judgments had not been made a lien on lands by statute, that a lien thereon could be acquired only by levy on execution, as in case of personal estate at the present

time.    *Catlin v. Jackson,* 8 Johns. 546.    Although in some
of the colonies judgments had been by statute made liens
on real estate nearly 200 years ago, yet judgments were
not made a charge on real estate in England until the stat-
ute of 1 & 2 Vict. ch. 110, which did not become operative
until August 16, 1838, *after* the case of *Neate v. Duke of
Marlborough,* 3 Mylne & Cr. 407, decided under the statute
of 13 Edw. I. by Lord COTTENHAM, whose opinion is quoted
by the court in support of its decision in this case.    I am
unable to see that this ancient statute, and the decision re-
ferred to under it, have the bearing and importance as-
signed to them.

When judgments were made a lien on lands of the debtor
by statute, no levy or seizure by the sheriff became or was
necessary.    " The seizure was already made when the exe-
cution came to his hands."    *Wood v. Colvin,* 5 Hill, 230,
231.    And so in Wisconsin, in *Shafer v. Phœnix Ins. Co.*
53 Wis. 361, and *Hammel v. Queen's Ins. Co.* 54 Wis. 72, it
is held that "in practice there is no such thing as a levy of
execution upon real estate.    All that is necessary to make
a regular sale upon execution issued upon a judgment is to
publish the notice of sale as required by the statute, and
make the sale at the time mentioned in the published no-
tice.    No entry of a levy upon the execution is necessary
to perfect such sale."    *Colt v. Phœnix Ins. Co.* 54 N. Y. 595.
And if no formal levy is necessary to attach the judgment
to the land, how can it be said that the lien of the judgment
is not fully and absolutely fastened upon the land by dock-
eting the judgment, without the empty form of merely put-
ting into the hands of the officer a writ upon which it is
not required he shall make a levy or do more than sell the
lands, a seizure of which has been already made by the lien
of the judgment attaching to them when docketed, as held
by these cases?    It does not, I think, change the matter in
the least to say that, as between the parties, *i e.,* the fraud-

Gilbert vs. Stockman and others.

ulent parties to it, the title passes, and a good title may be conveyed by the fraudulent grantee to a purchaser for value without notice of the fraud. So far as the fraudulent parties are concerned, the law makes the deed absolutely void when attacked, as it is here, as against the creditors of the grantor. Upon the conceded facts in this case, the fraudulent grantee is estopped, by the statute which condemns his title, from insisting upon it for any purpose as against the plaintiff.

The decision in *Garfield v. Hatmaker*, 15 N. Y. 475, is so clearly expressed and so carefully restricted that I cannot understand how it and its kindred cases on the same point can be taken or understood so as to serve in the least degree to show that the plaintiff's judgments are not liens on lands conveyed, in fraud of his rights as creditor, before the judgment was rendered. By the statute under which these cases were decided the title of the party acquired by reason of the payment of the purchase money for them by a dishonest debtor was valid as against the debtor and his creditors as well; but the statute created a resulting trust in favor of his creditors, which was an equitable interest and could be made available only in equity, but the title of the grantee was valid. Here the grantee's title is absolutely void at law as against the plaintiff, and the action is brought, not to enforce a trust, but to obtain a judicial declaration of invalidity of the conveyance. It is impossible, it seems to me, to read the very lucid opinion of Comstock, C. J., in *Garfield v. Hatmaker*, without recognizing the force of the distinction. The distinction is that in those cases the remedy of the judgment creditor is not by a suit for declaration of invalidity of the deed. This he cannot have. The deed is valid both at law and in equity. But, under the statute, a trust results "in favor of creditors *to the extent that may be necessary* to satisfy their just demands." R. S. secs. 2077, 2078. And so creditors must exhaust their rem-

edy at law in all other respects, and be able to establish that the enforcement of the statutory trust against the lands in question *is necessary* in order to satisfy their just demands; while in cases such as this the conveyance is void or voidable for fraud, and creditors by judgment have a conceded, absolute, and unconditional right to attack it and have it canceled. *Ahlhauser v. Doud,* 74 Wis. 409. There has been no case in this court since that of *Eastman v. Schettler,* 13 Wis. 324, where it has been necessary to determine the precise question involved in this case. That case has frequently been cited in decisions of this court without criticism and without question as late as *Evans v. Laughton,* 69 Wis. 138, 144, 145, and *Ahlhauser v. Doud,* 74 Wis. 400, 408, 409. In the latter case Mr. Justice TAYLOR, speaking for the court, says: "Taking the allegations of the complaint as true, it shows that the conveyances of said estate, and the mortgage given thereon by Vail, were all fraudulent and void as to the plaintiff, who is one of his creditors; therefore the deeds and mortgages, under sec. 2320, R. S., are absolutely void, and conveyed no estate to the grantees and mortgagee as against the claim of the plaintiff, and so the lien of the judgment and execution is perfect."

A judgment creditor has the choice of three remedies as against the prior fraudulent conveyance. He may sell the land upon execution issued on his judgment, and the purchaser may contest the validity of the title of the fraudulent grantee in an action of ejectment; or he may bring an action in equity to remove the fraudulent obstruction to the enforcement of his lien by execution, and await the result of such action before selling the property; or he may proceed by action in the nature of a creditors' suit to have the conveyance adjudged fraudulent and void as to his judgments, and the lands sold by a receiver or other officer of the court, and the proceeds applied to the pay-

ment of the judgments, in like manner as in the case of equitable interests and assets which cannot be reached by execution. In the second class of cases it is not necessary for the judgment creditor to first take out execution on his judgment, for it is already a lien on the land. *Dunham v. Cox*, 64 Am. Dec. 460; *Wadsworth v. Schisselbauer*, 32 Minn. 84; *Weightman v. Hatch*, 17 Ill. 281. In the latter case, which has been consistently adhered to in Illinois ever since, the court held that execution was not necessary to enable the judgment creditor to file his bill in such a case as this; that, as to him the conveyance being void, the creditor has the right to place himself in the same position which he would have occupied had it never been made, and first seek satisfaction out of the land. · " The grantee's title being tainted with fraud, he has no right to say that all other means to satisfy the debt shall be exhausted before he shall be disturbed in his title. In this case the complainant was not bound to issue any execution whatever. He was as much entitled to the relief asked without it as with it. It was an immaterial averment in the bill, and need not be proved at the hearing."

The right of the plaintiff to maintain the action if his judgments became a lien or a *quasi* lien cannot be, and is not, seriously questioned. As the judgments were liens on the land and no execution or levy was necessary to make them such, the plaintiff had a right to commence and maintain this suit. The lien would attach as certainly upon the docketing of the judgments, and as plainly so, as by issuing executions and delivering them to the sheriff and the formal indorsement of a levy under them, which, as already shown, is not necessary in the case of real estate, the execution being a mere authority to sell that to which the judgments, by force of the statute, have already attached. The plaintiff has a right to have all doubts arising from matters, whether of record or *in pais*, in respect to his

alleged lien removed, and to have his judgments declared
legal liens binding the title, notwithstanding the obstacles
fraudulently put in their way, so that no question may
exist as to the liability of the land to be sold to satisfy
them, to the end that purchasers at the sale may be able
to bid intelligently and the premises may bring their fair
value. The right to maintain such an action is not
founded upon or limited in the least degree by any statute
of this state; it is given by general principles of equity
jurisprudence applicable to the administration of the rem-
edies the law furnishes against fraud and fraudulent con-
veyances; nor are the statutes of New York in relation to
the subjection of real estate or interests therein so much
like our own as to entitle the decisions of the courts of
that state to be considered binding as precedents. The
law in that state on the point in question has been in an
uncertain and unsettled condition, and decisions in that
state might be cited, were it material, on either side of it.
As late as 1881, in the case of *Royer Wheel Co. v. Fielding*,
61 How. Pr. 437, VAN VORST, J., an able and experienced
judge, held that an execution was not essential to the
maintenance of a judgment creditor's action to set aside
fraudulent conveyances of real estate; and in *Mohawk
Bank v. Atwater*, 2 Paige, 54, Chancellor WALWORTH de-
cided that a creditor might file his bill to set aside a fraud-
ulent conveyance of the real estate of his debtor as soon
as he has obtained a judgment which is a lien on the land,
and that the judgment will continue to be a lien on the
land after the statutory period of ten years, as against the
defendant in the judgment, or his grantees without con-
sideration, but not as against *bona fide* purchasers or
incumbrancers. In *McElwain v. Willis*, 9 Wend. 548,
563, NELSON, J., after stating what is essential to the main-
tenance of a regular creditor's bill, proceeds to say that,
"if a bill is filed under the *common law* powers of the

court to remove an impediment in the way of a perfect remedy at law, interposed fraudulently or inequitably by the debtor, then it should be clearly shown that there was property upon which the *judgment was or might have been a lien,* if real, or the execution, if personal." And until the case of *Adsit v. Butler,* 87 N. Y. 585, in 1882, the question made on this record was regarded as one fit for a full discussion in the court of appeals.

The plaintiff had, I am well satisfied, a valid lien on the lands in question as against these defendants; and if but a "*quasi* lien," as it is called in some of the cases like the present, he still had a right to invoke the power of a court of equity to protect and enforce it, and to declare him entitled to the same *status* and position in respect to his judgments as liens on the land in question as if the flagrant fraud set out in the complaint had not been perpetrated to prevent him from subjecting the land to the satisfaction of his debts. It is conceded that there are authorities both ways on the question. I think that the rule laid down in *Eastman v. Schettler,* 13 Wis. 324, more than thirty years ago, is the correct and better rule, both upon principle and authority, and that it should not now be departed from, when nothing is to be gained by it but the observance of a mere empty ceremony,— an idle formality, having no semblance of benefit or advantage to either party. I think that the complaint states a good cause of action, and that the order of the circuit court sustaining the demurrer of the defendant thereto should be reversed.