THOMAS FARLEY, RESPONDENT, *v.* P. C. PARKER, AP-
PELLANT.

EVIDENCE—DEED OF PERSON NON COMPUS MENTIS MAY BE IMPEACHED.—The deed of a person *non compus mentis* is void, and when submitted to show title in an action of ejectment, may be impeached by evidence, showing the existence of that condition at the time of the execution of the deed.

WITNESS—OPINION OF INTIMATE ACQUAINTANCE.—Under section 696, sub-division 10 of the code of civil procedure, if the testimony shows that the witness is an intimate acquaintance of the person whose sanity is brought in question, his opinion is admissible, touching the mental sanity of such person, even though the witness should not, in express words, state the fact of such intimate acquaintance.

JURISDICTION—TERRITORIAL PROBATE COURTS.—The probate courts, under the territorial organization, were courts of limited and inferior jurisdiction.

APPEAL from Marion County.

The facts are stated in the opinion of the court.

*A. C. Gibbs,* for appellant:

A deed from an insane person, not under guardianship, is voidable only, not void, and creates a seisin. If the plaintiff had a remedy it was in equity to have the deed set aside, as an act of an insane person. A court of law is bound to en-force a written contract or deed; a court of equity may go behind either, and inquire into the condition of the parties, and the very right of the case between them. Thus Farley could not have his equitable estate inquired into in his ac-tion of ejectment. He is confined to his paper title—legal

estate. (1. Story's Eq. Jur. 10 ed. secs. 161, 437, 438; 2. Johns. Ch. 585, 596 and 597.)

Law and equity is not blended in Oregon. Farley had his election to bring a suit in equity or an action at law. He has chosen the latter, and is bound by his estate pleaded, which is purely legal, and not equitable. (Story's Eq. Jur. sec. 694; *Peck* v. *Newton*, 45 Barb. 173; *Griswold* v. *Miller*, 15 Barb. 520, 524; *L'Amaroux* v. *Crosby*, 2 Paige, 422; 5 Pick. 217; 11 Pick. 305; 6 Met. 415; 1 Gray, 437; 6 Id. 279.)

This is not only the settled doctrine of Massachusetts, but also of the common law. Mr. Justice Blackstone, in his Commentaries, vol. 11, p. 291, states the doctrine thus: "Idiots and persons of non-sane memory, infants and persons under duress, are not totally disabled to convey or purchase, but *sub modo* only, for their conveyances and purchases are voidable but not actually void."

Chancellor Kent lays down the broad doctrine that "by the common law a deed made by a person *non compos* is voidable only and not void." (4 Kent, Com. 4th ed. 451; 3 J. J. Marshal, 660; 1 J. J. Marshal, 244, 245; 7 Dana (Ky.), 524; 3 Conn. 231; 15 Ohio (Griswold), 156; 54 Ill. 323; 33 Ill.; 32 Iowa, 524; 53 Maine, 451, 456; 48 N. H. 133; 17 Wend. 119, 134; 3 Barb. 556; 12 Id. 235, 237; 20 Id. 559; 2 Pick. 183; 32 Iowa, 524; 5 Seld. N. Y. 45; 24 Ind. 387; 1 Hill, 130; 9 N. Y. 45; 51 N. Y. 379; 17 N. Y. 270; 48 N. H. 133; 2 Am. R. 202, 205; 20 Barb. 559; 5 Dure, 130; 48 Barb. 109; 15 Barb. 520, 524.)

As the result of the investigations of Judge Washburn as to the weight of authorities, he fully sustains Mr. Justice Blackstone and Chancellor Kent. (3 Washb. Real Prop., 244, sec. 15; 2 Greenleaf, sec. 300 and note 4; and 1 Story's Eq. Jur., secs. 228, 229, 230, 437 and 694.)

The opinion of an intimate acquaintance respecting the mental sanity of a person, may be given. (Code, 250, sec. 10; 42 N. Y. 282; 34 Id. 170; 36 Id. 276; 24 Id. 298.)

His evidence did not show that he was an "intimate acquaintance," and there was no other evidence as to that, as the bill of exceptions shows. Decrees of probate courts are only presumptive evidence, not conclusive in such

matters. (*Hart* v. *Deamer*, 6 Wend. 497; *Griswold* v. *Miller*, 15 Barb. 520; 51 N. Y. 386; 2 Paige's Ch. 426, 427, note; *In re Morgan*, 7 Paige, 236; 2 Barb. Ch. 208; 2 Greenl. Ev. secs. 698 and 690; 2 Cowen & Hill's notes, 942, note 680; 1 Phil. Ev. with notes by Cowen & Hill, p. 375.)

The decree of a probate court granting letters of guardianship is void, if it does not appear that notice was given to the subject of it before the inquisition is taken at least ten days. (Stat. Or. 1855, p. 393, sec. 9; 5 Pick. Mass. 219; *Bates* v. *Delevan*, 5 Paige, 299; *Thomas* v. *Merchant's Bank*, 9 Paige, 216; Freeman on Judg. secs. 116, 117, 123; 5 Wend. 290; 10 Wend. 592; *Bloom* v. *Burdick*, 1 Hill, 130; Blackwell, 185–6.)

*Dolph, Bronaugh, Dolph & Simon, and F. A. Chenoweth,* for respondent:

A deed executed by an insane person is not voidable only but absolutely void; and that the pretended grantor upon recovering from his insanity, or his heir at law, in case he dies without ever being restored to reason, may sue for and recover the lands in ejectment, is abundantly settled by the authorities. The plain reason of the rule is that it requires two competent assenting minds to conclude a contract, and if one of the minds be insane, the contract is void *ab initio*, a nullity. (1 Pars. on Cont. 383, notes *a* and *b*; *Dexter* v. *Hall*, 15 Wall. 20–26; *Gibson* v. *Soper*, 6 Gray, 279; *Hoovy* v. *Hobson*, 53 Maine, 452; *Chew* v. *The Bank*, 14 Md. 317–318; *Miles* v. *Lingerman*, 24 Ind. 385; *Van Deusen* v. *Sweet*, 51 N. Y. 378.)

It is also established by the case of *Van Deusen* v. *Sweet*, 51 N. Y. 383–384, that "it was competent for the plaintiff to sustain the action by showing that Sweet, at the time of executing the deed to Jacobie, was of unsound mind, although no fraud was practiced upon him, in order to induce him to execute the deed, and although the incompetency of Sweet to transact business or execute a conveyance of his property had not been legally or judicially ascertained or declared at the time of or prior to the execution of said deed;" and again, "It was not merely void-

able, but absolutely void. It was, in fact, not his deed, never having had any legal existence or vitality. There was consequently nothing to be set aside by the interposition of a court of equity, or by recourse to an equitable action; but the fact of its absolute nullity was available to overcome and avoid the defense set up and interposed under it to defeat the plaintiff's claim and title."

The condition of mind of the person alleged to have been insane both before and after the main fact, may be shown as tending to evidence the condition of the party's mind at the time of the conveyance. (23 Penn. St. 117; 4 Conn. 203.) For the purpose of showing the condition of Michael Farley's mind on November 28, 1856, the deed to Colvin from him being dated ——, 1856, we were allowed to read in evidence the paper, entitled in the notice of appeal, "Proceedings in the probate court in vacation, October 20, 1856." It appears from this transcript that the judgment was rendered by the court, and not in vacation by the judge.

The court of probate in Oregon is a court of superior and general jurisdiction, and unless it appears affirmatively from the record of its proceedings that it did not have jurisdiction of the person or subject-matter affected by its decision, the presumption of law is in favor of the judgment. (*Russell* v. *Lewis*, 3 Or. 380; *Heatherly* v. *Hadly*, 4 Id. 1; Stats. 1854, 313, sec. 13; *Crepps* v. *Durden*, 1 Smith's Lead. Cas. 1021-23.)

It does not appear affirmatively from this record that Michael Farley was not served with notice of that proceeding. It appears affirmatively only that he was not present at the hearing before the court; but the recital in the journal entry that the coroner's return showed that Michael Farley was found in his county, is more nearly affirmative proof that he was than that he was not served with notice. Whether a witness has shown such an intimate acquaintance with the person whose sanity is in question as to entitle him to express an opinion thereon, is a matter largely in the discretion of the court. (*Pittman* v. *Pittman*, 3 Or. 554.)

The judgment of the probate court of Douglas county, rendered on November 28, 1856, declaring said Michael Farley to have been insane, is conclusive evidence of his insanity, so long as the same remains unreversed and unimpeached. This charge referred to the proceedings in probate court, etc., a copy of which is hereto given in this bill of exceptions, and there was no evidence in the case referring to any other judgment or proceeding in any other probate court. By the statute of Oregon in force when said adjudication of insanity was had, the jurisdiction over that matter was expressly conferred upon the probate court. (Stats. 1854, 362, sec. 9–10.)

That court was a court of superior jurisdiction, and if it obtained jurisdiction of the person of Michael Farley, which, as we have already argued, is to be presumed, unless the contrary appears affirmatively from the record, then it is a well established principle that the judgment of said court in the premises is conclusive as to the questions determined therein while it stands unreversed. (*Swift* v. *Stark*, 2 Or. 99; *Warner* v. *Myers*, 3 Id. 218; 1 Greenl. Ev., sec. 528; Code, 254–55, sec. 723, subd. 1.)

By the Court, PRIM, C. J.:

This is an action to recover the possession of real property. The respondent claims to own the undivided one-sixth part of eighty acres of land, as one of the heirs at law of Michael Farley deceased.

The answer denies the allegations of the complaint, and alleges that one Colvin is the owner of said land, and that appellant is in the possession thereof under a contract of purchase from said Colvin.

The replication puts in issue the affirmative allegations in the answer. Respondent obtained a verdict and judgment in the court below, from which appellant appeals to this court. Both parties claim under Michael Farley, to whom patent was issued by the United States government for a donation claim of three hundred and twenty acres, of which the eighty acres in controversy is a part.

Appellant claims that Michael Farley, in his life-time,

sold and conveyed the land in question to said Colvin, and respondent claims that at the time of the execution of said deed Michael Farley was insane, and so the deed was and is void, and the title never passed out of Michael Farley.

After the plaintiff rested his case the defendants' counsel offered in evidence a deed from Michael Farley to Thomas Colvin, under whom, by conveyances, the defendant claims title, and rested.

Plaintiff's counsel then undertook to show, by evidence, that the deed to Colvin was void on the ground that the said Michael Farley was insane at the time said deed was executed. To show the insanity of said Michael Farley, the plaintiff, by his counsel, offered to read in evidence the deposition of A. J. Swearinger, to which defendant, by his counsel, objected. The counsel of defendant based his objections to the admission of this deposition on the following grounds: 1. The insanity of a person not under guardianship cannot be shown in an action of ejectment; 2. A deed given by an insane person not under guardianship is voidable, but not void; 3. The plaintiff's remedy, if he has any, is by suit in equity, and not by action at law.

Neither of these grounds, we think, were sufficient upon which to reject deposition. There appears to be some confusion in the cases reported as to whether a contract or deed executed by an insane person should be treated as void or only voidable. Mr. Parsons says: " The words void and voidable have often been very vaguely used when applied to contracts, and the word void has been frequently used to denote merely that the contract was not binding, and as expressing no opinion whether such contract might or might not be ratified." (1 Pars. on Cont. 329, note b.)

This being an action to recover real property, and defendant claiming title under a deed executed by said Michael Farley to Colvin, it was necessary to produce said deed in evidence to sustain his title. And when thus produced, although appearing to be regular upon its face, we think plaintiff had a right to attack and impeach it by any evidence tending to show that it was not the deed of said Michael Farley. His signature may have been forged or obtained by fraud.

Or, as it is claimed in this case, may have been executed by him while insane, and not capable of executing a deed or any other instrument requiring volition.

In *Dexter* v. *Hall*, 15 Wall. 20, it was held that a power of attorney executed by a lunatic, or a person *non compos mentis*, was absolutely void. That was an action of ejectment, and the question presented here was ably argued and thoroughly considered by the court in that case.

Mr. Justice Strong, in delivering the opinion of the court, says: "Looking at the subject in the light of reason, it is difficult to perceive how one incapable of understanding and acting in the ordinary affairs of life can make an instrument the efficacy of which consists in the fact that it expresses his intention, or, more properly, his mental conclusions."

The fundamental idea of a contract is, that it requires the assent of two minds; but a lunatic or a person *non compos mentis* has nothing which the law recognizes as a mind, and therefore cannot make a contract.

In *Van Deusen* v. *Sweet*, 51 N. Y. 383, which was also an action of ejectment, it was held competent to show that Sweet was of insane mind at the time of executing a certain deed, although no fraud had been practiced upon him to induce its execution, and although his competency to transact business had not been legally or judicially ascertained prior to or at the time of its execution.

And it was further held that a deed executed by a person *non compos mentis*, was not only voidable but absolutely void. As we understand these decisions, they mean simply that a deed regular on its face will be declared void whenever the testimony submitted shows that the person executing it was at the time of its execution *non compos mentis*.

The deposition of Swearinger was further objected to by defendant on the ground that it had not been shown that the witness was intimately acquainted with Michael Farley. This witness not being a professional witness could not give his opinion as to the mental sanity of a party, unless shown to be an intimate acquaintance. (Civ. Code, 250, sec. 696, sub. 10.) It does not appear in the deposition of

this witness that he stated directly in words that he was an intimate acquaintance of said Farley, nor do we think it was necessary that he should have done so, in order to bring him within the rule laid down in the statute.

When such evidence is offered, the court may look into the facts stated by the witness, in order to determine whether he was an intimate acquaintance of the party, and whether the facts stated are sufficient upon which to base an opinion as to the sanity of the party.

Applying this rule to this deposition, we think it sufficiently appears that the witness was an intimate acquaintance of said Farley, and that the facts stated by him were sufficient upon which to base an opinion as to his mental sanity. And by applying the same rule to the deposition of Reed, we think the opinion of that witness was properly rejected by the court as being nothing more than a casual acquaintance. It follows from the views therein expressed that there was no error committed by the court in its rulings upon either of these depositions. For the purpose of showing the condition of Michael Farley's mind on November 28, 1856, just after the execution of the deed to Colvin, the plaintiff was allowed to read in evidence certain papers, called "Proceedings in the probate court in vacation, October 20, 1856." Defendant, by his counsel, objected to the admission of these papers on the following grounds: 1. That it did not appear that the said probate judge had jurisdiction of the person of the said Michael Farley; 2. That no paper, notice, or citation had been issued in said proceedings; 3. That no notice of said proceeding had been served upon him, and there was no appearance by or for him, and the said proceedings were void."

These objections were overruled by the court, to which ruling the defendant, by his counsel, duly excepted, and assigns here as error upon which he relies to reverse the judgment. It was insisted by counsel on behalf of plaintiff that "the court of probate in Oregon is a court of superior and general jurisdiction, and unless it appears affirmatively from the record of its proceedings that it did not have jurisdiction of the person or subject-matter affected by its decis-

ion, the presumption of law is in favor of the judgment. *Russel* v. *Lewis, Tustin* v. *Gaunt,* and several other decisions made by this court are cited and relied upon to sustain this proposition. But these decisions, we think, are not applicable, for the reason that the judgment or proceeding in question was not made by a court of general and superior jurisdiction, but appears to have been a proceeding had in 1856, under the territorial organization prior to the formation and adoption of the state constitution.

The probate court was at that time composed of a single judge, and had no clerk, and we think was a court of limited and inferior jurisdiction, and therefore not entitled to any presumptions in favor of its jurisdiction. The facts necessary to give it jurisdiction should appear among its proceedings, or they must be treated as void.

In *Tustin* v. *Gaunt,* it was decided by this court that "the constitution of this state having provided that county courts shall be courts of record, having general jurisdiction, to be defined and limited by law; and the legislature having given them exclusive and original jurisdiction in all matters pertaining to probate courts, it was held that county courts in exercising judicial powers in such business, should be regarded as courts of general and superior jurisdiction."

That decision was based expressly upon the constitutional provision, and had no reference or application to the judgments and proceedings of probate courts, rendered prior to the adoption of the constitution.

The "proceedings" had in the probate court, on October 20, 1856, in relation to the insanity of Michael Farley, failing to disclose the facts necessary to give the court jurisdiction were a nullity, and should have been rejected by the court.

And the court below having committed error in admitting this evidence, the judgment is reversed and the cause remanded for a new trial.