French Lumbering Co. vs. Theriault and wife.

French Lumbering Company, Respondent, vs. Theriault and wife, Appellants.

*September 27 — October 12, 1900.*

| 107 | 627 |
| 108 | 314 |
| 107 | 627 |
| 112 | ³410 |
| 112 | ³453 |
| 107 | 627 |
| 113 | ³191 |

*Debtor and creditor: Fraudulent conveyances: "Void" in statute: Lien of judgment docketed against fraudulent vendor: Priority: Equity: Remedies: Deed of insane person, when voidable.*

1. The word "void," in sec. 2320, Stats. 1898, relating to fraudulent conveyances of property by debtors, means voidable.

2. A deed of real estate made under such circumstances as to fall within the condemnation of sec. 2320, Stats. 1898, nevertheless passes title to the property to the fraudulent vendee, so that a judgment thereafter rendered on a precedent debt of the vendor and duly docketed does not become a specific lien on the land under sec. 2902, which provides that a money judgment, docketed in the office of the clerk of the circuit court of a county, shall be a lien on the real property of the judgment debtor in such county.

3. Under such circumstances as those stated in No. 2:

(a) A judgment creditor can obtain a specific lien on the real property of the judgment debtor by levy thereon under an execution issued on the judgment, and then equity will aid him to remove the impediment to an advantageous sale thereof and enforcement of the lien created by the fraudulent transfer.

(b) Equity will not aid a judgment creditor till he actually obtain a specific lien by attachment of the property under writ of attachment or levy thereon under an execution, or he has exhausted all his legal remedies to collect his claim. The last condition mentioned being satisfied, equity will enforce the creditor's right to a lien on the property in an action to annul the fraudulent transfer of the property so that the judgment may attach thereto.

French Lumbering Co. vs. Theriault and wife.

(c) If the fraudulent vendor die before a specific lien shall have been obtained on the property, the judgment cannot be enforced by execution against such property under sec. 2978, Stats. 1898, and a lien be thereby secured which equity will protect.

4. A deed made by an insane person not under guardianship is voidable only. It passes title so that a judgment thereafter rendered and docketed will not be a specific lien on the property conveyed till the conveyance be actually avoided; and if before that occur the insane person die, the judgment creditor cannot, by execution levy under sec. 2978, Stats. 1898, obtain a lien on such property which equity will aid by removing the cloud created thereon by such conveyance.

[Syllabus by MARSHALL, J.]

APPEAL from an order of the circuit court for Chippewa county: A. J. VINJE, Circuit Judge. *Reversed.*

The complaint states, in substance, the following: Plaintiff is a domestic corporation. February 23, 1898, it recovered a judgment in the circuit court for Chippewa county, Wisconsin, against Isador Lavoie, for $2,824.60, that was duly docketed on the succeeding day in the office of the clerk of the circuit court for said county, and upon which, September 8, 1899, and before the commencement of this action, an execution was duly issued. Pursuant to such execution the sheriff of said county levied upon and advertised for sale certain lands (describing them) situated in said county, to satisfy the amount due upon the judgment, with interest and costs. January 24, 1898, said Lavoie was, and for some time prior thereto had been, insane, and on that day he was so adjudged and committed to one of the asylums of this state. On the same day *John Theriault,* with knowledge of the incompetency of Lavoie, fraudulently induced him to execute and deliver to said *Theriault* a deed conveying to him the said lands, which were then the property of Lavoie, with intent on the part of said *Theriault* to hinder and delay said Lavoie's creditors, particularly plaintiff. When *Theriault* obtained said deed, he knew that Lavoie was insane and incompetent to make it and also knew that Lavoie was largely

indebted to plaintiff and to other parties. *Theriault* did not give any consideration for the lands. The indebtedness to plaintiff was contracted on the faith of a promise made by Lavoie to secure the payment thereof by a mortgage on said land, which promise Lavoie intended in good faith to fulfill, but was prevented from doing so by his becoming insane. Lavoie died March 5, 1898, without leaving property sufficient to anywhere near pay his indebtedness.

The prayer for relief was that the conveyance to *Theriault* be declared void as to plaintiff, that *Theriault* be enjoined from selling or incumbering the lands, and that a lien be adjudged thereon in plaintiff's favor for the amount of its judgment and costs.

The defendants demurred to the complaint for want of facts stated therein sufficient to constitute a cause of action, and for defect of parties defendant in that the administrator of Lavoie's estate, his widow and heirs, were not joined as defendants. The demurrer was overruled and defendants appealed.

For the appellants there was a brief by *W. M. Bowe* and *J. A. Anderson*, and oral argument by *Mr. Bowe*.

For the respondent there was a brief by *W. H. Stafford*, attorney, and *W. F. Bailey*, of counsel, and oral argument by *Mr. Bailey*.

MARSHALL, J. Sec. 2902, Stats. 1898, is to the effect that a money judgment, when docketed as provided by law, shall, for a period expiring ten years from the date of the rendition thereof, be a lien on the real property of the judgment debtor, except his homestead, in the county where the same is docketed. If the real estate which respondent seeks to reach in this action was the property of Lavoie, within the meaning of that section, when the judgment against him was docketed it obviously became a lien thereon. Sec. 2978 provides that after the expiration of one year from the

death of a judgment debtor, execution may be issued by permission of the court or the judge thereof upon good cause shown, against any property upon which such judgment shall have been a lien at the time of the death of such debtor, and may be executed in the same manner and with the same effect as if he were living. According to the complaint plaintiff was a judgment creditor of Lavoie when he died. All the facts exist and are properly alleged in the complaint requisite to the maintenance of the action to remove the apparent impediment to respondent's judgment lien, created by the deed of Lavoie to *Theriault* made prior to the rendition of the judgment, if, notwithstanding such deed, such judgment was in fact, at the time of the death of the grantor, a specific lien upon the land. It is conceded that, if the lien did not exist by virtue of the judgment alone, none was acquired by the execution issued thereon after Lavoie's death, because in that event the execution was wholly unauthorized by law and void.

From what has preceded this is the first question to be solved in reviewing the decision of the circuit court over-ruling the demurrer to the complaint: Is a judgment, properly docketed in the county where real estate is located which the judgment debtor previously owned but before such docketing conveyed to another, a lien on such real estate if such conveyance is void under sec. 2320, Stats. 1898? That section provides that: "Every conveyance or assignment, in writing or otherwise, of any estate or interest in lands, . . . made with the intent to hinder, delay or defraud creditors or other persons of their lawful actions, damages, forfeitures, debts or demands . . . shall be void." The learned counsel for respondent contend that the word "void" in the section means absolutely void; that as regards a person circumstanced as plaintiff was when Lavoie made his deed to *Theriault*, the title to the property attempted to be conveyed remains entirely unaffected by

such attempt; and that the judgment attaches to and be-
comes a lien thereon accordingly.   That such is the law in
many and perhaps most jurisdictions, and is so laid down
by many and perhaps most if not all of the elementary
writers, as contended by the learned counsel for respond-
ent, possibly cannot be successfully denied.   But that the
law is to the contrary as declared by this court as early at
least as *Hyde v. Chapman*, 33 Wis. 391, decided in 1873, cer-
tainly cannot be gainsaid.   The doctrine of that case was
fully considered and approved by this· court in *Gilbert v.
Stockman*, 81 Wis. 602, decided in 1892.   True, the decision
there was made by a divided court, but that hardly takes
much from its force as regards what the law is for this
state, since it has existed for over a quarter of a century
and necessarily has become by that lapse of time a rule of
property.   We are not unconscious at all of the force of the
attack now made upon the doctrine of this court.   It is but
a renewal of the attack made in *Gilbert v. Stockman*, where,
notwithstanding strong judicial opposition, as indicated by
the able and exhaustive dissenting opinion written by Mr.
Justice PINNEY, concurred in by Mr. Justice WINSLOW, the
early view of the law declared in *Hyde v. Chapman* was
adhered to.   It is needless to speculate now upon how the
court would then have decided or as present constituted
would decide if the question were presented as an original
proposition.   It will be readily admitted that the law of
the state, as declared by its highest court, upon a careful
consideration of the subject involved, should not be changed
without some very strong reason therefor.   A mere change
in the personnel of the bench, and of individual opinions
of judges, is not sufficient; and when the law as so de-
clared has remained undisturbed for a long period of time,
for example, twenty-five years or more, and necessarily be-
come a rule of property, it should not be changed at all by
mere judicial declaration.   Under such circumstances courts

must follow the maxim, " *Stare decisis, et non quieta movere.*" (To adhere to decisions, and not disturb questions that have been established.)

The foregoing renders unnecessary any attempt even to review the able argument of counsel for respondent, by which the idea was vigorously pressed upon our attention and consideration that the word " void " in sec. 2320 means absolutely void as to creditors, and that a judgment against the fraudulent vendor attaches to the property fraudulently conveyed regardless of the conveyance.   It is sufficient to say that the contrary is the law of this state and that it is so firmly entrenched in our jurisprudence as not to be open to question.   However, it is deemed best not to dismiss the subject without correcting the error counsel seems to have fallen into, that *Gilbert v. Stockman,* 81 Wis. 602, and *Hyde v. Chapman,* 33 Wis. 391, are out of harmony with other cases decided by this court.   In endeavoring to make such correction we shall not attempt to defend the reasoning of prior decisions, but merely state the facts and conclusions of each case, treating the results as not now open to question.

In *Eastman v. Schettler,* 13 Wis. 325, upon which great reliance is placed to support the attack on *Gilbert v. Stockman,* it will be noted that, while the court said *arguendo* that 'if the conveyance of the land was made with intent to defraud the judgment creditor it was void and the judgment became a lien upon it,' the court was not speaking of the effect of the judgment by itself, but its effect under the circumstances of that case, which were that it had been enforced by a seizure of the realty in question (so far as such a seizure can take place under an execution), a sale thereof under the execution, and the perfection of the sale by the making and delivering of a deed to the purchaser.   Under those circumstances it was said that the purchaser could maintain an action to recover the land, because the deed

conveyed to him the title thereto regardless of the fraudulent conveyance of the property prior to the rendition of the judgment.

In the *Gilbert Case* the rule of the *Eastman Case* was limited to its facts upon the theory that the proceedings under the execution created a lien upon the property, but that none existed before the levy under the execution, which is in harmony with the cases that uphold the right to proceed in equity in aid of an execution levy upon land which has been conveyed by the judgment debtor in fraud of his creditors but deny the right in the absence of such levy, because, while the judgment of itself is not a lien upon the property, a lien thereon may be acquired by seizure thereof under the execution issued on the judgment.

In *Cornell v. Radway*, 22 Wis. 260, the sheriff had levied upon the property and advertised it for sale under an execution issued on the judgment. The court said the case belonged to that class where one is compelled to resort to a court of equity for the purpose of removing some obstruction fraudulently or inequitably interposed to prevent a sale on execution, and not to the class where a person resorts to equity as a general creditor to obtain satisfaction of his debt; that, while in the latter class of cases all legal remedies must be exhausted as a condition precedent to the maintenance of the action, in the former the party has a right, under the established rules of equity jurisprudence, to invoke equity to remove a cloud upon an existing interest in real property. True, the court based its decision on *Gates v. Boomer*, 17 Wis. 455, remarking that such case was "an action by the judgment creditors of one of the defendants to have a deed executed by him to his codefendant set aside as a fraudulent obstruction to the proceedings of the plaintiffs to enforce the lien of their judgment, so that they might sell the property upon execution," and said, *arguendo* and partly outside the facts of the case, that, "The judgment of

French Lumbering Co. vs. Theriault and wife.

the plaintiff is by statute a specific lien upon the land without the issue or levy of an execution. . . . The existence of the lien without adequate remedy for enforcing it at law, by reason of the fraudulent or inequitable obstruction interposed by the defendant, is sufficient to give a court equity jurisdiction," indicating that, to the writer of the opinion at least, the mere fact of proceedings having been had to enforce the judgment was without significance as regards. whether the plaintiff was possessed of an interest in the property covered by the fraudulent conveyance, which equity would free from an existing cloud upon it. But the fact remains that these circumstances were present: an execution on the judgment and proceedings thereon against the property by a levy under the execution by advertising the property for sale as provided by law; which circumstances, later in the history of similar litigation, came to have controlling significance, and without conflict with anything actually decided in the *Cornell Case* when tested by its facts.

It will be found that there is nothing in *Gates v. Boomer* to call for or justify the remark made in *Cornell v. Radway*, so far as such remark was outside the facts of the case. In the former case the facts were that while there was no execution levy, an execution had been issued and returned unsatisfied, and all the legal remedies of the judgment creditor to collect his debt had been exhausted without his being able to obtain any satisfaction thereof. In that situation the court held that the creditor, as to property fraudulently transferred by the judgment debtor, and upon which the creditor would, but for such transfer, have had an unclouded specific lien, was entitled to invoke the aid of equity *to enforce his right to a lien* by removing the fraudulent obstruction thereto. "The case," said the court, " belongs to the class where the issue of the execution gives the plaintiff a specific lien upon the property, but he is compelled to go to a court of equity for the purpose of removing some obstruc-

tion fraudulently or inequitably interposed to prevent a sale
on execution."

In *Galloway v. Hamilton*, 68 Wis. 651, the maintenance of
an action in equity by a judgment creditor circumstanced
somewhat different than respondent is, turned on the fact
that a lien had been obtained by a levy upon the property
under an execution, the prior cases in this court being re-
ferred to as in harmony with the decision.   The court said,
" If it be true that the real estate seized on the execution
belonged to the judgment debtor, and a deed has been put
upon record which purports to convey the legal title to an-
other, which will have the effect to defeat or greatly impair
the lien unless the deed is canceled, we suppose it is well
settled that a court of equity will interfere and remove the
inequitable obstruction.   ' The equitable relief sought rests
upon the fact that the execution has issued, and a specific
lien has been acquired upon the property of the debtor by
its levy, but that the obstruction interposed prevents a sale
of the property at a fair valuation.' "   After thus disposing
of the point under consideration it is probably unfortunate
that the court said *arguendo*, and, as will be plainly seen,
somewhat outside the case, quoting the *obiter* remark in
*Cornell v. Radway*, 22 Wis. 260, heretofore referred to,
" Where the judgment of the plaintiff is by statute a specific
lien upon the land without the issue or levy of an execution,
it would seem that the plaintiff is entitled to the aid of the
court, whether execution has been issued and returned un-
satisfied or not," thus in a measure keeping up the uncer-
tainty as to whether a judgment, standing alone, is a specific
lien upon the real property of the judgment debtor which
he fraudulently conveyed prior to its rendition, instead of
its being a mere right to acquire a lien, which requires the
issuance of an execution and an actual seizure of the prop-
erty thereunder in order to ripen into such an interest in the
*res* as will be recognized by a court of equity in an action to

remove a cloud thereon by the owner of such interest. It should be said that the remark referred to was good law as applied to the case, because the attempted conveyance of the property was absolutely void for want of authority to make it, though the decision was not very clearly placed on that ground.

In *Evans v. Laughton*, 69 Wis. 138, the property was seized under a writ of attachment. This proposition among other things was sufficiently involved to receive the attention of the court: Was the conveyance made to hinder and defraud creditors? the idea being that if such was its character no lien was acquired thereon by the attachment. On such proposition the court said, in effect, that, if it were to be decided in the affirmative, the judgment creditor would be at liberty, notwithstanding the conveyance, to seize the land on execution or attachment as the property of his debtor, and thereby acquire a specific lien at law which equity would lend its aid to protect.

In *Ahlhauser v. Doud*, 74 Wis. 400, an action in equity, by a judgment creditor to remove a cloud from his lien upon property fraudulently mortgaged and conveyed by the judgment debtor, was sustained solely upon the ground that the plaintiff had in fact acquired a specific lien on such property by a seizure thereof under an execution issued on his judgment. True it was there said that, "The fraudulent deeds and mortgages are absolutely void, and conveyed no estate to the grantees and mortgagee as against the claim of the plaintiff, and so the lien of the judgment and execution is perfect;" but it will be observed that the lien was spoken of as being created, not by the judgment, but as being single and created by the judgment and execution; and by a careful reading of the opinion it will be clearly seen that it proceeded to a conclusion on the theory that the fraudulent instruments were absolutely void only in the sense that they were void at the election of the judgment cred-

itor — that is, that they were voidable; that the term "absolutely void" was not appropriately used; that the title to the property was so affected by the fraudulent conveyances that without an actual seizure of it under an execution or attachment the creditor could not obtain a specific lien thereon but only the right to a lien; that upon such right being exercised by the specific act of election, to avoid the fraudulent transfers, of a seizure of the property, an actual interest therein was acquired, leaving such conveyances as mere clouds upon such interest, which equity would lend its aid to remove.

We have now reviewed the more important cases preceding *Gilbert v. Stockman,* 81 Wis. 602, and shown, it would seem, as regards anything actually decided therein, that they are all in harmony with the decision in that case and with what is here decided,— that is, that a judgment against a fraudulent vendor of real property, which has been duly docketed in the county where such real estate is located, does not of itself create a lien on such property, because the conveyance vests, in the fraudulent vendee, the title of his vendor, subject to the right of the defrauded creditors at their election to avoid it; that such creditor can only avoid the fraudulent transfer and obtain a specific lien upon the property covered by it by a seizure thereof under a writ of attachment or execution, or, after the exhaustion of all legal remedies to collect the debt without success, by an appeal to a court of equity to remove the impediment to the judgment attaching to the property; that in the absence of such seizure the judgment creditor has only the right to a lien upon the property fraudu'ently conveyed and to enforce such lien for the satisfaction of his debt, which right, being strictly legal, cannot be prote;ted in equity till the creditor has first exhausted all his legal remedies to that end, as indicated; that when the right to a lien upon the property fraudulently conveyed ripens into a lien in fact by an actual

French Lumbering Co. vs. Theriault and wife.

:seizure of the property under attachment or execution, a court of equity will then lend its aid to free the lien from the cloud upon it created by the fraudulent conveyance.

Having disposed, adversely to the respondent, of the contention that its judgment and the docketing thereof in the county where the land in controversy lay created a specific lien upon the property, assuming that the prior conveyance thereof was void as to the creditors of the grantor because tainted with fraud, under sec. 2320, Stats. 1898, it is not necessary to decide the question, argued in the briefs of counsel, of whether the facts alleged in the complaint are sufficient to show that the deed was so tainted.

The only question left for consideration is this: Is the deed of an insane person, who has not been adjudged insane and placed under guardianship, merely voidable? If it is absolutely void, then, according to the complaint, the title to the property in question did not pass to *Theriault* by the conveyance under which he claims. In that event the respondent's judgment became a lien upon the property and the complaint shows a good cause of action in equity to remove the cloud upon such lien.

There is some conflict of authority in this country, and between the courts of this country and those of England, regarding the character of an insane person's deed. In England it is held that such a deed is absolutely void. *Ball v. Mannin*, 1 Dow & C. 380. There are a few authorities to the same effect in this country, most or all of which, upon careful examination, will be found to be quite undecisive and unsatisfactory. The text writers are in substantial accord-that an insane person's deed conveys title to the grantee and is voidable only. Devlin, Deeds, § 73; 1 Washb. Real Prop. (5th ed.), 486; 2 Kent, Comm. 452; Kerr, Real Prop. § 2316; Pingree, Real Prop. § 1281; 1 Jones, Real Prop. § 52; 1 Story, Eq. Jur. §§ 222, 228; 11 Am. & Eng. Ency. of Law (1st ed.), 133. The only text writer that is out of line

is Beach. He states the law in accordance with the English doctrine in his late work on the Modern Law of Contracts, at § 1390, in a few words, without comment even to the extent of recognizing a conflict of authority on the subject. The only support for the text in the notes is a few New York cases, none of which supports it in fact, the leading case being *Van Deusen v. Sweet*, 51 N. Y. 378, to which further reference will be hereafter made. The most prominent case cited is one decided in the supreme court of New York, *Brown v. Miles*, 16 N. Y. Supp. 251, reported in the regular series of state reports in 61 Hun, 453. That is cited as a definite judicial declaration that the great weight of authority is to the effect that an insane man's deed is absolutely void. The writer of the opinion so says, citing, however, only a few New York cases, none of which in fact supports the doctrine to its full extent.

It is deemed proper to call special attention here to the careless manner in which the text above referred to was prepared, lest the profession be misled by it. It illustrates the danger of placing any great reliance on some of the modern text-books, and the importance of more care being exercised in their preparation.

In Devlin on Deeds [§ 73] the law is stated thus: "The deed of a person *non compos mentis* who is not under guardianship transfers a seisin and is merely voidable." That is supported by a large collection of cases from many states of the Union. In Washburn on Real Property [(5th ed.), vol. 1, p. 486] it is said that infants and insane persons not under guardianship are in the same class, substantially, in respect to their acts being voidable and not void. Both of the text writers specially referred to cite *Van Deusen v. Sweet, supra,* and *Farley v. Parker*, 6 Oreg. 105, which is based on the New York case, as exceptions to the great array of authority to which they call attention.

In *Van Deusen v. Sweet,* the court did not go to the extent

of holding that the deed of an insane person, though not under guardianship, is in all cases absolutely void. The decision was limited to cases where the insanity is of such a nature as to render the subject of it absolutely incompetent to act mentally in the transaction,— to persons so insane as to be wholly devoid of reason. It was said, in effect, that there is no doubt that a person may be insane and his mental unsoundness be of such a nature as to render his acts only voidable; that the mere fact of the insanity of the maker of a deed, regardless of the degree of insanity, is not sufficient to render the deed absolutely void if he is not, at the time of making it, under guardianship because of his infirmity.

There is strong reason for the idea that, if a person is so utterly devoid of mental power as to be totally incapable of comprehending the nature of his act in making a deed, or knowing that he is engaged in such a transaction, the instrument should be held to have no legal existence for any purpose. That is as far as the New York court has gone.

If we were to hold in accordance with *Van Deusen v. Sweet*, it would not save the complaint from condemnation as not stating a cause of action, for there is no allegation in it in regard to Lavoie's condition at the time he made the deed, except that he was insane. The degree of his insanity is not alleged. In *Aldrich v. Bailey*, 132 N. Y. 85, a complaint, held by the lower court, on the strength of *Van Deusen v. Sweet*, to state a good cause of action to avoid certain deeds as absolutely void, was condemned, without affirming the rule laid down in the *Van Deusen Case*, for want of allegations showing that the grantor of the deed was wholly without mental capacity. Though some twenty years had elapsed since the decision in that case, the court declined to say it was correctly decided, but said that, assuming its correctness, a complaint to annul the deed of an insane person not under guardianship is insufficient unless it shows that such person was absolutely and completely unable to understand

or comprehend the nature of the transaction. Other New York cases are in the same line. *Riggs v. Am. T. Soc.* 95 N. Y. 503; *Valentine v. Lunt*, 115 N. Y. 496.

*Valpey v. Rea*, 130 Mass. 384, is cited to our attention as holding that the deed of an insane person is absolutely void unless ratified by the grantor on recovering his reason. *Brigham v. Fayerweather*, 144 Mass. 48, should be added. However, they do not go to the length contended for. In the one case it is said that the deed of an insane person is ineffectual to convey the title to land "against the grantor or against his heirs and devisees *unless it is confirmed* by the grantor himself when of sound mind, or by his legally constituted guardian, or by his heirs or devisees." That language was repeated in the second case in connection with the following: "Such deed may be *disaffirmed*, without returning the consideration money or placing the other party *in statu quo.*" A careful analysis of the quoted language must lead to the conclusion that the Massachusetts court came far short of holding what respondent contends. A thing that "may be made good by ratification," or is not so binding but that it may be "disaffirmed," it would seem, must be said to be voidable only. That such was the sense in which those terms were used appears conclusively by the fact that numerous early Massachusetts cases were referred to as having established the doctrine declared, in all of which it was distinctly held that the deed or contractual act of an insane person is merely voidable. For example, in *Carrier v. Sears*, 4 Allen, 336, it was said: "The contract of an insane person, or one obtained by fraud or duress, is voidable and not void." In *Gibson v. Soper*, 6 Gray, 279, after some other not very well considered remarks, it was said, *arguendo*, speaking of the insane person as the demandant, "The estate is still in the demandant; for if it passed, it passed by the deed of an insane man never ratified or confirmed. That, in law, is impossible." The court, how-

French Lumbering Co. vs. Theriault and wife.

ever, referred to *Allis v. Billings,* 6 Met. 415, saying that it settled the law for Massachusetts that the deed of an insane person is voidable only.   In the *Allis Case* the lower court instructed the jury that the deed was absolutely void.  That was held error on the appeal, the court remarking: " The jury should have been instructed that this fact [of insanity], if established, rendered the deed voidable."  Numerous other Massachusetts cases to the same effect might be cited.

If any further support were needed for the view that the late Massachusetts cases do not change the rule early laid down and affirmed in that court, it is furnished by *Hovey v. Hobson,* 53 Me. 451, where language is used similar to that in *Valpey v. Rea,* 130 Mass. 384, as regards ratification or confirmation being necessary to render an insane man's deed valid.   What was meant by such language is clearly shown by the language of the decision, as follows: " The deed of an insane man not under guardianship is not void, but voidable," etc.   " If under guardianship, the deed is absolutely void."   A multitude of cases to the same effect might be cited.  We will refer to only a few of them.  *Castro v. Geil,* 110 Cal. 292; *Boyer v. Berryman,* 123 Ind. 451; *Nichol v. Thomas,* 53 Ind. 42; *Eaton v. Eaton,* 37 N. J. Law, 108; *Elston v. Jasper,* 45 Tex. 409; *Odom v. Riddick,* 104 N. C. 515; *Burnham v. Kidwell,* 113 Ill. 425; *Crawford v. Scovell,* 94 Pa. St. 48; *Gribben v. Maxwell,* 34 Kan. 8; *Allen v. Berryhill,* 27 Iowa, 534; *Burke v. Allen,* 29 N. H. 106.

Our attention is called to *Dexter v. Hall,* 15 Wall. 9, as holding to the contrary of the cases above cited.  If counsel were right as to that case, we should hesitate before running counter to it on a new question in this court, unless there is such an overwhelming weight of authority against it as to clearly show that it is wrong.  What is in fact decided in *Dexter v. Hall* is that a power of attorney made by an insane person is absolutely void.  Reference is made to the doctrine of the English courts, that the deed of an in-

sane person is classed with such person's power of attorney, but the court recognized that there may well be a distinction between an insane person's power of attorney and his deed. It was said, as regards the character of the former, that the decisions in England and in this country are in harmony, but that as regards the character of the latter, whether voidable or absolutely void, there is considerable conflict and inconsistency. The decision of the court, however, was confined, as it necessarily had to be, to the question before it, and we are unable to find that the doctrine announced has ever been extended in that court to deeds. In *Johnson v. Harmon*, 94 U. S. 371, the subject was referred to, it being said that the deed of a person so bereft of reason as not to be able to distinguish between right and wrong is at least voidable.

There are cases where courts have reached the same conclusion, as to the scope of *Dexter v. Hall*, as that urged by respondent's counsel. For example, in *German S. & L. Soc. v. De Lashmutt*, 67 Fed. Rep. 399, decided in the circuit court for the district of Oregon, the following language is used: "Whatever difference of opinion once existed as to whether the deed of an insane person was void or voidable, the question is authoritatively settled that such deed is absolutely void," citing *Dexter v. Hall*, and *Farley v. Parker*, 6 Oreg. 105. The latter case, it will be remembered, merely followed *Van Deusen v. Sweet*, 51 N. Y. 378, to the effect that the deed of a person so insane as to be wholly bereft of reason is absolutely void, and *Dexter v. Hall* does not attempt to decide the question at all. In *Parker v. Marco*, 76 Fed. Rep. 510, decided in the United States circuit court for the district of South Carolina, Mr. Justice SIMONTON, who delivered the opinion, said that in *Dexter v. Hall* "the question before the court was whether the deed of an insane person was void or voidable. To that question the court directed its attention, and solved the doubts created by con-

French Lumbering Co. vs. Theriault and wife.

flicting decisions in other jurisdictions, fixing the law in the federal courts, which was afterwards amplified by Mr. Justice CLIFFORD in *Johnson v. Harmon*, 94 U. S. 371." How very far that statement is from what was in fact decided in those cases is clearly indicated by what has been said. No attempt was made to harmonize conflicting decisions in this country. As indicated, the law as settled in England was referred to, also the inconsistencies in the adjudications of this country, as to deeds of insane persons, without expressing any decided opinion as to the right of the matter, and then the question presented for adjudication was decided in harmony with the decisions of the English courts and those of this country as well.

We have now carried the discussion of the subjects presented by this appeal to a considerable length, though no greater, probably, than their importance warrants. We received much assistance from the able briefs of counsel on both sides of the controversy, and have pursued our investigations to a satisfactory conclusion. On the first branch of the case we have shown, as it seems, that there is a substantial harmony in the decisions of this court, from the beginning, on the lines laid down in *Gilbert v. Stockman*, 81 Wis. 602, which are tied to the idea expressed in that case that the word " void " in sec. 2320, Stats. 1898, means voidable, and that the title to lands conveyed in fraud of creditors actually passes to the vendee, subject, however, to be divested at the election of any such creditor. On the second branch of the case we have shown that there is substantial harmony in the decisions of this country contrary to the law as held by the English courts, that the deed of an insane person is voidable, not void; that the exceptions to that doctrine are few in number and are either based on a misconception of the authorities on which they are grounded, or follow the lead of *Van Deusen v. Sweet*, 51 N. Y. 378, which goes no further, as we have shown, than to hold that

the deed of a person absolutely bereft of reason is absolutely void. We.must hold that, at the time respondent's judgment was rendered, the judgment debtor did not have title to the land in controversy, hence that such judgment did not become a specific lien thereon, whether the deed to *Theriault* be considered as tainted with fraud under sec. 2320, Stats. 1898, or to be the deed of an insane person. In any event, the deed passed the title to the land to the grantee therein named, subject, however, to be divested according to law. Plaintiff not being possessed of a lien upon the land by virtue of his judgment, his right to enforce the judgment by execution did not survive the death of Lavoie, so no lien was acquired under the execution levy. The demurrer to the complaint, therefore, should have been sustained.

*By the Court.*— The order appealed from is reversed, and the cause remanded for further proceedings according to law.

CASSODAY, C. J., took no part.