[No. 7239.]

## GREEN v. HULSE.

1. LUNATICS—*Conveyances by.* The great weight of authority is that the deeds of persons in fact insane, but not so adjudged are oidable and not valid. (243)

When such a conveyance comes in question the inquiry should not be .limited to the mental condition of the donor, but the circumstances attending the transaction and the conditions under which the deed was executed should be investigated. If upon a valid consideration, without fraud upon or undue advantage taken of the grantor's condition, if the transaction was fair and for the interest of the grantor, it should be sustained.

To exclude evidence of these circumstances and conditions, *is error.* (243, 244)

2. ——*Who May Assail the Conveyance.* The deed of a lunatic is not open to assault by anyone and everyone. The heir at law may contest its validity if he has not in some way precluded himself from taking such action. (244)

3. ESTOPPEL—*By Conduct.* When one, with actual knowledge of the facts, induces another, by words or conduct, to believe that he approves or acquiesces in a transaction, and the other relying upon the assurance, alters his position, the former is estopped from repudiating the transaction, to the other's prejudice.

The son, knowing that his mother, aged, infirm, and mentally unbalanced, contemplates the conveyance of real estate to another, upon the engagement of the other to support her during her natural life, approves the arrangement, and expressly consents thereto. He will not, after the death of the mother, be heard to assail such conveyance upon the ground of her mental incompetency.

Nor will his wife, who, having likewise assented to the transaction with full knowledge, has accepted the voluntary conveyance of the husband. (244, 245)

*Error to Denver District Court.*—Hon. GREELEY W. WHITFORD, Judge.

Messrs. TONEY, BARKER & BOYD, for plaintiff in error.

Mr. HARRY E. KELLY and Mr. CHARLES H. HAINES, for defendant in error.

Mr. JUSTICE GARRIGUES delivered the opinion of the court:

1. The subject of this action is the title to lot 38 and the south half of lot 39, block 16, Berkeley, City and County of Denver. Plaintiff's object is to recover possession and damages, and cancel a deed and trust deed as clouds upon the title.

The complaint alleges that Clara M. Hulse is the owner in fee simple of the property; that her husband's mother, Persis Hulse, died intestate October 14, 1909, owning the property; that for a year or more prior thereto, she had been of unsound mind, and incapable of conveying property; that well knowing her condition, defendant, Maud Green, June 25, 1909, by threats, duress, and undue influence, coerced Persis Hulse into signing, acknowledging and delivering a deed purporting to convey the property to Green, as her free and voluntary act, and the same day ousted Persis, and took possession of the premises herself, which ever since she has detained; that August 17, 1909, Green borrowed $700.00 from defendant Emma Peterson, and secured the loan by a trust deed on the property; that Peterson, when she made the loan, knew Persis was mentally unsound, and that Green had no title; that Burns Hulse, the son and sole heir of Persis, inherited all the property from his mother, and October 16, 1909, deeded it to his wife, the plaintiff, and that Green's deed, and the trust deed, are clouds upon her title. Prayer for possession, damages, and that the deed and trust deed be declared void, and canceled.

The answer admits all the conveyances, and alleges the deed to Green was made by Persis of her own free will, in consideration of the following agreement, which Green has kept and performed; that she owns the property in fee simple; and denies the other allegations of the complaint:

"In consideration of receiving absolute title to lot 38 and the south half of 39, in block 16, Berkeley,

City and County of Denver, Colorado, I hereby agree to take care of Mrs. Persis P. Hulse during her natural life, furnishing her with comfortable board, lodging and clothing, and such medical attendance as may be necessary; also to pay funeral expenses in case of death.    (Signed)  Maud O. Green.''

It then pleaded an equitable defense of estoppel by conduct *in pais*, to the effect that Persis Hulse, living alone, 75 years old, infirm, disagreeable, and hard to get along with, was without means, and in need of help, with no one to care for her; that her son Burns and his wife (the plaintiff) refused to care for her or allow her to live with them, or to come to their home; that her sister, 85 years old, had, in consideration of maintenance, deeded her property to Green, who was caring for her, and Burns and his wife proposed to Green that she make the same arrangements with Persis, and care for them both, and that it was through the desire, solicitation, advice, consent, knowledge, acquiescence, and approval of plaintiff and her husband that the deed and contract were executed.   This portion of the answer was stricken on plaintiff's motion.   At the trial, a jury was waived, and the court confined the issues, and narowed the case to the trial of the single question of the sanity of Persis Hulse at the time of making the deed, and in effect turned the case into an inquisition in lunacy, and found that when she made the deed, she was a lunatic, incapable of making a conveyance, and that the deed was on that account, at the time it was made, absolutely void and of no more legal effect than if it had never been executed.   Plaintiff was awarded possession and damages, and the deed to Green and Peterson's trust deed, were canceled.

2.  Persis Hulse, about 75 years old, owned, and lived alone in the property in controversy.  She was disagreeable, without means, infirm, mentally deranged, or unbalanced, and needing attention, with no one to care for her.  Her son Burns and his wife lived in the

city, but did not want her in their house, and she objected to living with them. She had a sister 85 years old, who, sometime previously had deeded her property to Green in consideration of maintenance, and Green was taking care of her. Green was their niece, and Persis wanted to make a similar arrangement, so she could be with her sister, and have Green care for them both. The matter was frequently discussed between Persis, her elder sister, Mrs. Green, Burns Hulse, and plaintiff, and it was their general opinion that Persis should deed the property to Green. Burns participated in some of these conversations, and suggested, approved and advised the transaction. Accordingly, June 25, 1909, Persis, in company with others, went to a notary public at the Albany hotel, where the deed was prepared, signed, acknowledged and delivered to Green, who in turn executed and delivered the contract. Burns knew they were going to the hotel to make these papers, and had promised to be present and assist. He went there ostensibly for that purpose, but for some reason, left before they arrived, did not return, and was not present when the papers were executed. Plaintiff and her husband considered the making of the deed and contract before their execution, and raised no objection, and expressed their willingness that the transaction should be consummated. It was fully and carefully discussed and considered by them, and the papers were finally executed with the consideration and formality usually attending the execution of such documents. Green then took Persis to her home where she cared for her until her death, except during a short period when she was at the hospital for treatment. Green borowed $700.00 from Mrs. Peterson, and secured it by a trust deed on the property. Peterson loaned the money in good faith, without any knowledge of the alleged infirmity in Green's title, and the deed contained no clause showing the consideration was maintenance, and that a failure to perform the acts promised, should invalidate it, and entitle the grantor to a reconveyance. Shortly after Persis' death, plaintiff obtained

a quit-claim deed from her husband, and brought this action.

Plaintiff offered no evidence tending to show fraud, undue influence, duress, coercion, undue advantage, persuasion, over-reaching, circumvention or any wrong or improper act or bad faith, or evil purpose of any kind, going to the fairness of the transaction. When defendant attempted to show the transaction was fair and right, and for the best interest of Persis, the court excluded the evidence. It would hear evidence on no disputed allegation other than the sanity of Persis Hulse, and permitted no other matter to be gone into. A preponderance of the evidence showed that Persis was old, infirm, erratic, queer, weak-minded, changeable, forgetful, disagreeable, repulsive, hard to manage, unbalanced, occasionally had epileptic attacks, was probably addicted to some drug habit, and that her mind was affected from old age—senile dementia. She was a person no one would like to have in their home. While she did not have a sound mind, capable of transacting business, the evidence does not show that she was wholly insane, or incapable of understanding the purpose of the transaction. She had sufficient mental capacity to understand and appreciate the transaction and to consent to the act of execution. By this we do not mean that she was mentally competent to conduct a business transaction, but that she was able physically and mentally to sign and acknowledge the deed.

3. The trial court went off entirely on the single question of insanity, and would consider nothing else. It misapprehended the controlling principles of law which should have governed the case. He took the position that the only material question in the case was the trial of the fact of Persis Hulse's mental condition when she executed the deed; that if she was unsound mentally, then regardless of all other considerations, the deed was necessarily void, for all purposes, when executed. Proceeding upon this theory, it excluded from the testimony

much competent evidence which might have had an important bearing on the controversy. The distinction between a void and voidable instrument of insane persons was ignored. Persis Hulse had not been adjudged insane by any competent tribunal at the time she made the deed. The great weight of authority is, that deeds of persons in fact insane, but not so adjudged, are generally held to be voidable and not absolutely void.—*Wolcott v. Insurance Co.,* 137 Mich. 309, 100 N. W. 569; *Jamison v. Culligan,* 151 Mo. 410, 52 S. W. 224; *Insurance Co. v. Sellers,* 154 Ind. 370, 56 N. E. 97, 77 Am. St. Rep. 481; *Blinn v. Schwarz,* 177 N. Y. 252, 69 N. E. 542, 101 Am. St. Rep. 806; *Lumbering Co. v. Theriault,* 107 Wis. 627, 83 N. W. 927, 51 L. R. A. 910, 81 Am. St. Rep. 856; 22 Cyc. 1171. Mrs. Green was not trying to drive a business transaction with Mrs. Hulse. She was with her relatives who apparently had her interest at heart, and wanted the property to be used for her support. Under such circumstances, while she might pass in the class of lunatics, and be held mentally incompetent, this would not of itself necessarily make the deed in this case void. At most it would be voidable only, subject by a proper proceeding by the person having the right, to be avoided. If it be said that was the purpose, and just what the court did in the instant suit, the answer is, the court did not proceed upon the theory that the deed was voidable only, and hear evidence as to the facts and circumstances connected with the transaction, and conditions under which it was made, for the purpose of determining its validity, or whether plaintiff was precluded from bringing suit. It heard evidence as to her sanity only, and decreed that her mental condition merely, regardless of all other considerations, necessarily rendered the deed void when executed. This was not proper. If the transaction was fair and reasonable, and based upon a valid consideration, without fraud, and there was no circumvention, over-reaching or undue advantage taken of the grantor's mental condition, and the contract was made in good faith and was fair, and

was for her benefit and to her best interest, then the court ought to have sustained the deed and held it absolute under the circumstances of this case. Instead of this it excluded all evidence tending to show that though the deed was voidable, it should nevertheless, under the circumstances connected with its execution, and the purpose for which it was made, be declared valid and absolute. Whether it should have been declared void after her death, at the suit of the heir, was a question that depended upon the evidence, which the court should have considered.

4. Upon the question of estoppel, even if Persis Hulse was so insane as to render her mentally incompetent to make a deed, it does not follow that it could be defeated, cancelled, or set aside by anybody, without the right, by showing that she was insane. There must exist some occasion or reason for pronouncing a voidable deed void, and the person must have the right to bring the action. Just anyone cannot ask to have the deed of an insane person overturned merely because he was insane. Burns Hulse, the heir, upon the death of his ancestor, the grantor, could do so, unless he was precluded by the facts, conditions and circumstances surrounding the making of the deed. He could by his own conduct be estopped from asking to have the voidable deed of his insane ancestor pronounced void. The question is, whether under the conditions and circumstances surrounding the making of this deed, he is precluded by conduct, from now having it canceled. The doctrine of equitable estoppel applies to him, and whatever will preclude him, will estop his wife, the plaintiff, because her deed was purely a voluntary conveyance; in addition to this she took the title knowing all the circumstances, so in what we say, we draw no distinction between them. She knew her mother-in-law was contemplating this contract with Mrs. Green. She knew it was her husband himself who first broached the subject of such an arrangement. He knew of the time and place, and promised to be present at the hotel when the papers were executed. Plaintiff herself knew all about the transaction

and that the deed was to be made to Mrs. Green. She says that she and her husband knew of the contract, and were perfectly willing that the deed should be made. There is no doubt but Burns Hulse was instrumental in causing the deed and contract to be executed. We then have this condition: Plaintiff was perfectly willing that Mrs. Green should assume the responsibility, trouble and expense of the care of her husband's old and demented mother; she was willing that a contract should be made to that effect and that Mrs. Green should receive a deed to the property; being fully informed of the transaction, encouraging it, and making no objection thereto, she now, after the death of the old lady, seeks to step in and not only take the property from Mrs. Green, but deprive an innocent lender of her security, upon the ground that Mrs. Hulse was mentally incompetent when she made the deed. She knew all of these facts when she consented and acquiesced in the transaction and then raised no objection to the mental capacity of Mrs. Hulse to make the deed. This does not appeal to us as equitable or just. Where a person with actual knowledge of the facts, induces another by his words or conduct to believe that he acquiesces in or ratifies a transaction, or that he will offer no opposition thereto, and the other, in reliance on such belief, alters his position, such person is estopped from repudiating the transaction to the other's prejudice.—*McPherson v. Berry,* 92 Ia. 64, 92 N. W. 64; *Paine v. Bank,* 194 Pa. St. 403, 45 Atl. 312; *Thor v. Olsen,* 125 Ill. 365, 17 N. E. 753, 16 Cyc. 791. "In cases involving the title to real estate, the doctrine of estoppel by conduct rests upon the broad principle of equity, that one who encourages by representations, or even stands by and sanctions the acquisition of land by another, will be estopped to defeat the purchase by afterwards asserting title in himself."— *Patterson v. Hitchcock,* 3 Colo. 533; *Yates v. Hurd,* 8 Colo. 345.

Under the circumstances of this case, we do not feel we would be upholding the law and rendering substan-

tial justice, to allow Burns Hulse to come in now, after the death of his mother and defeat the title of Mrs. Green to this property, and his wife is in no better position.

The judgment is reversed, and the cause remanded.

*Reversed and remanded.*

CHIEF JUSTICE MUSSER and Mr. JUSTICE SCOTT concur.