No. 13,281.

Fitzwater *v.* Norcross et al.
(37 P. [2d] 522)

Decided November 5, 1934.

Mr. EMIL O. ANDERSON, for plaintiff in error.

Mr. SIMON QUIAT, Mr. SAMUEL S. GINSBERG, Mr. IRA L. QUIAT, Mr. HERMAN H. SEAMAN, for defendants in error.

*In Department.*

MR. JUSTICE BURKE delivered the opinion of the court.

PLAINTIFF in error is hereinafter referred to as plaintiff, defendant in error the Five Square Oil and Gas Company as the Five Square Company, defendant in error Standard Oil Company of Colorado as the Standard Company, and the other defendants in error by name, or all of them as defendants.

Plaintiff brought suit to annul certain contracts for failure to perform; to cancel certain assignments of leases; to adjudge him the owner of an undivided one-half interest in said leases, and to adjudge all defendants, save Wilson, without interest in contracts or leases. Judgment was entered for defendants on their motion for nonsuit. To review that judgment plaintiff prosecutes this writ. There are eleven assignments of error grouped and argued under three headings. All these, however, simply amount to the contention that the judgment is contrary to the evidence. The answering defendants pleaded performance, laches and estoppel. The questions presented therefore are: 1. Was there per-

formance? 2. Did plaintiff sleep on his rights until he lost them? 3. Is plaintiff estopped by his conduct?

The pleadings are unnecessarily extensive and involved and there are about 250 pages of printed abstract. Two written contracts and approximately thirty leases are set out. All this we have examined with care in a futile search for some justifiable reason to reverse this judgment, but find no excuse for following all these ramifications in this opinion.

In August, 1926, plaintiff and Wilson owned certain oil and gas leases in Larimer county and contracted with Norcross and Wallace for drilling thereon. As a part of the consideration certain assignments were made to Norcross and Wallace, who assigned to the Five Square Company of which they were officers and of which Wilson later became a director. The Standard Company and Goodstein also hold through Norcross and Wallace and with full knowledge. In the event of failure to do the drilling as per contract all rights thereunder and under the leases were to cease and determine. One provision of the contract was that a test well was to be started within ninety days and drilling continued "until said test well shall have penetrated any and all oil or gas sands of probable production." The contract further provided for the execution of a bond in the sum of $2,500 to insure the commencement of the work within ninety days "and the prosecution of drilling operations to the depth and into the formation where oil and gas were encountered by the Midwest Refining Company." Norcross, Wilson and the Five Square Company answered jointly. They alleged that drilling was begun as per contract and prosecuted with diligence until gas was encountered in commercial quantities; that plaintiff and Wilson accepted the well as a full compliance with the contract; that bond was executed and accepted and later cancelled with approval of the obligees; that plaintiff accepted royalties under the contracts from the sale of gas and oil produced from the wells drilled; that he

joined in leases of property involved; that with his knowledge and consent the Five Square Company thereafter drilled to commercial production other wells, the last begun in December, 1930; that with full knowledge plaintiff permitted said company to construct pipe lines and a refining plant on the property, to contract for drilling and for the sale of oil and gas, and to enter into obligations and spend large sums of money in these activities, neither giving any notice nor making any objection, indicating dissatisfaction with the conduct of the work or claim of violation of contracts, until February, 1931.

Plaintiff's replication alone would probably put him out of court. He admits the receipt of dividends, though alleging that they were comparatively trifling. He admits that he joined in the assignment of leases, denies numerous allegations on information and belief concerning which he would be held to information, makes other denials in the form of legal conclusions, and denies "all allegations contrary to the amended complaint" which is of course no denial.

1. On the question of breach of contract it is sufficient to say we think the trial court was right in holding that plaintiff did not establish it. Much is made in the brief of his counsel on the contention that the test well was not drilled to "any and all oil or gas sands of probable production," but it is clear that that phase contemplated only a drilling "into the formation where oil and gas were encountered by the Midwest Refining Company" and plaintiff's evidence shows that this was done. In fact his own expert witnesses make it clear that in their judgment there were no "sands of probable production" not penetrated by defendants' work.

2. With full knowledge plaintiff remained inactive while defendants expended large sums of money and did a vast amount of work in reliance upon the contracts and leases involved. Such action or failure to act constitutes laches. 21 C. J., p. 210, §211; Id. p. 225, §220;

Id. p. 232, §226. In cases where the loss or risk of loss may be great those claiming to be aggrieved are held to the utmost diligence in instituting and prosecuting actions for relief. *Hall v. Nash,* 33 Colo. 500, 508, 81 Pac. 249.

3. There can be no doubt that both under pleadings and evidence this plaintiff is estopped. He admits that he took dividends and joined in the assignment of leases under the contracts he now seeks to annul, and the record clearly discloses that, lulled into a sense of security by his action, these defendants made such expenditures and entered into such obligations that no judgment could place them in status quo. Their plea of estoppel is therefore good. 21 C. J., p. 1202, §205; Id. p. 1204, §206; Id. p. 1206, §207. One who accepts benefits may not repudiate the instrument or transaction under which he received them. *Denver City I. & W. Co. v. Middaugh,* 12 Colo. 434, 21 Pac. 565. *Fallon v. Worthington,* 13 Colo. 559, 22 Pac. 960. One who, with knowledge, induces another to believe that he acquiesces in a transaction, and by reason of that belief alters his position to his injury, may not repudiate that transaction to the other's prejudice. *Green v. Hulse,* 57 Colo. 238, 142 Pac. 416. One may be estopped by his silence when duty requires him to speak and another, relying upon that silence, acts to his injury. *Southern Surety Co. v. Peterson,* 86 Colo. 350, 281 Pac. 746.

This plaintiff received benefits under the instruments he now seeks to repudiate; by taking dividends and participating in the transfer of leases he induced defendants to believe that he acquiesced in their reliance upon the contracts he now attacks; and by his failure for years to protest or object he led defendants to rely upon his acquiescence and make expenditures and enter into obligations by reason thereof.

The judgment is affirmed.

MR. JUSTICE BUTLER, sitting for MR. CHIEF JUSTICE ADAMS, and MR. JUSTICE HILLIARD concur: