Argued October 21, decided November 9, rehearing denied December 21, 1909

## O'NEILL v. KEITH & CO.

[104 Pac. 725.]

MASTER AND SERVANT—PREADING AND PROOF—FRAUD.

1. In an action on a contract for services as a salesman, fraud in the execution of an exhibit claimed by defendant to be the contract, and not in the consideration, was provable by plaintiff under the general denial or plea of *non est facutum*.

MASTER AND SERVANT—EXISTENCE OF CONTRACT—SUFFICIENCY OF EVIDENCE.

2. In an action on a contract for services as a salesman, evidence *held* to show that a writing exhibited by plaintiff was the contract by which defendant was bound.

MASTER AND SERVANT—ACTIONS FOR WAGES—VARIANCE.

3. In an action on a contract of employment, there was no variance between allegations of the complaint that plaintiff and defendant entered into a contract whereby plaintiff promised to work for defendant as a salesman for two years from December 1, 1904, and defendant promised to employ plaintiff as such salesman for said two years and pay him $250 at the end of each and every month for his services, and a contract offered in evidence and reading: "(Defendant) agrees to engage (plaintiff) for the period of two years beginning Dec. 1, 1904, at the sum of $2,970 per year, payable monthly, $250, this to equalize the sale of $66,000 at 4½ per cent., 4½ per cent. on all amounts over that sum, or 4½ per cent. under if my sales fail to reach that amount."

APPEAL AND ERROR—HARMLESS ERROR—RULINGS AS TO DEPOSITIONS.

4. Where defendant's witness in his deposition gave the whole history of the making of certain exhibits, defendant was not prejudiced by the striking out of interrogatories calling only for the opinion of the witness as to whether there was any mistake or fraud and calling for no statements of fact.

MASTER AND SERVANT—TIME TO SUE—SEVERABILITY OF CONTRACT.

5. Where there is a payment specified in a contract for services as salesman, which is earned and due, the contract is severable to the extent that such payment may be sued for at once.

From Multnomah: ALFRED F. SEARS, JR., Judge.

This is an action by W. H. O'Neill against Edson Keith & Co., to recover the sum of $936.78, as a salary

upon a contract of employment. Trial was had before
the court without a jury, and judgment rendered in
favor of plaintiff. Defendant insists that numerous
errors were committed at the trial, which will justify
a reversal of the judgment, and appeals.

AFFIRMED: REHEARING DENIED.

For appellant there was a brief over the names of
*Messrs. Emmons & Emmons* and *Mr. William H. Fowler*,
with oral arguments by *Mr. Fowler* and *Mr. Walter
W. Todd.*

For respondent there was a brief over the names of
*Messrs. Gammans & Malarkey*, with an oral argument by
*Mr. Dan J. Malarkey.*

MR. JUSTICE EAKIN delivered the opinion of the court.

This is an action to recover money due to plaintiff as
a salary upon a contract of employment. The allegation
of the contract in the complaint is:

"That on September 14, 1904, plaintiff and defendant
entered into a contract wherein and whereby plaintiff
promised to work for defendant as a salesman and com-
mercial traveler for two years from December 1, 1904,
and defendant promised to employ plaintiff as such sales-
man an commercial traveler for said two years and
pay him $250 at the end of each and every month for
his services."

It is further alleged that he performed six months'
services under that contract. Defendant denies the allega-
tions of the complaint, except that it admits that plain-
tiff was employed, but was to be paid a commission
upon the sales made, that plaintiff rendered services for
the period of six months, and affirmatively alleges that
the services were perfomed under the following contract
(Defendant's Exhibit 2):

"Chicago, Sept, 14, 1904. Edson Keith & Co. I agree
to work for you from the date herein until Dec. 1, 1906,—
my duties to be as traveling representative in the States
of Oregon, Washington and Montana and over the

Northern Pacific Railroad in Idaho,—to conduct myself entirely to your satisfaction and subject to your orders,— my compensation to be $2,970.00 on sales of $66,000.00 per annum, in the territory mentioned, and 4½ per cent on all amounts over that sum and 4½ per cent under, if my sales do not reach that amount.

"[Signed] Wm. H. O'Neill."

That the total amount of goods sold during the six months mentioned was $23,380; that his commission thereon has been wholly paid; and that he has received thereon in excess of the amount due the sum of $142.59, for which defendant asks judgment. The reply denies that the work was done under the contract set out in the answer, but alleges: That the agreement between plaintiff and defendant (Plaintiff's Ex. 1) is as follows:

"Chicago, 9-14-04. Edson Keith & Co. agree to engage W. H. O'Neill for the period of two years, same beginning December 1, 1904, and terminating Dec. 1, 1906, at the sum of $2970.00 per year, payable monthly, $250.00, this to equalize the sale of $66,000 at 4½ per cent, 4½ per cent on all amounts over that sum or 4½ per cent under if my sales do not reach that amount.

"[Signed] Edson Keith & Co."

That the agreement set out in the answer (Exhibit No. 2) was signed by plaintiff upon the representation of defendant that it was a memorandum of the same substance and effect as the one set out in the reply (Exhibit No. 1) and believing it so to be he was induced to sign the same by mutual mistake or by deception and fraud of the defendant.

1. The cause was tried by the court without the intervention of a jury, and the court found the facts in favor of plaintiff and rendered judgment thereon, and we are called upon to determine whether Exhibit No. 1 or 2 is the true contract between plaintiff and defendant. They certainly do not mean the same thing. Defendant contends that the court erred in admitting evi-

dence of fraud in the execution of Exhibit No. 2 on the ground that fraud cannot be proved unless it is pleaded. The fraud sought to be proved by plaintiff was fraud in the execution of Exhibit No. 2, and not in the consideration, and therefore may be proved under the general denial or plea of *non est factum.* 3 Pl. & Pr. 663; 7 Pl. & Pr. 692; *Farley* v. *Parker,* 6 Or. 105 (25 Am. Rep. 504) ; *Olston* v. *Oregon Water Power & Ry. Co.,* 52 Or. 343 (96 Pac. 1095: 97 Pac. 538) ; *Corby Ex'rx* v. *Weddle,* 57 Mo. 452; *Gebhart* v. *Francis,* 32 Pa. 78; *County of Schuylkill* v. *Copley,* 67 Pa. 386 (5 Am. Rep. 441) ; *Lombard* v. *Cowham,* 34 Wis. 486; *Shampeau* v. *Connecticut River Lumber Co.* (C. C.) 42 Fed. 760.

2. These two exhibits were drawn at about the same time and typewritten by defendant's stenographer and Exhibit No. 1 delivered to plaintiff as evidencing the contract. Why they are not duplicates needs some explanation. Plaintiff's explanation is that, while he and McRoy were talking over the terms of the contract, his demand being for $250 per month and 5 per cent on all sales over $66,000 per annum, and when they had agreed on $250 per month and 4½ per cent on all sales over that amount, McRoy, defendant's agent, "then pulled a contract out of the * * desk and offered it to me to sign," which he refused to do because it did not provide for $250 per month, but only a 4½ per cent commission, and, after further controversy, Exhibit No. 1 was drawn and signed by McRoy, for the company, and that McRoy "pushed this paper a little back that he had signed, and says, 'Sign this duplicate,' and I put my signature to what I supposed was a duplicate of what he signed, and the first time I knew there was any difference was when this case was brought up. In the meantime I had no other duplicate. I never received any but the one I handed to my attorney. (Exhibit No. 1)." McRoy's

explanation is that Exhibit· No. 2 was the contract and was signed first by plaintiff, and he says:

"After he had signed the said Exhibit No. 2 to which I refer as the contract, he asked me for a copy of the same. I replied that it was not the custom of Mr. Adams (the president) or the company to give copies of contracts. Thereupon he stated that he desired something to show on what terms he was employed. I gave him a block of our letterheads, and told him to write down his recollection of the contract. He then wrote down in longhand his memory ·of the contract, as I supposed. I looked it over and saw that, although the language was his own, it was the same in effect as the one he had signed. It was simply a memorandum for his convenience, and simply was intended to show his recollection of the contract."

And McRoy had his stenographer transcribe it. He then signed it and gave it to plaintiff. This explanation by McRoy is certainly very unreasonable. It is hardly credible that a large wholesale house would refuse to give a party with whom it deals a copy or duplicate of the contract. Neither can we believe that a man at the head of a large wholesale business, when asked by a party with whom he contracts, for a copy of the contract, instead of giving it, would tell him to write his recollection of the contract, and then have it transcribed, sign it, and permit the other party to carry it away as representing the contract, when it did not. But, even if this took place, then we ought to find that the defendant is bound by the writing so given to the plaintiff as containing the contract, but we conclude that Exhibit No. 1 was the contract first written out and accepted by the parties, and by the terms of which defendant is bound.

3. The next question is: Does Exhibit No. 1 establish the contract alleged in the complaint? The first of it is a definite hiring for two years at a salary of $2,970, payable in monthly payments of $250, and fully supports

the allegation of the complaint. The last clause of Exhibit No. 1 appears to be explanatory of the measure by which the salary is fixed, namely: "This is to equalize the sale of $66,000 at 4½ per cent, 4½ per cent on all amounts over that sum, or 4½ per cent under, if my sales do not reach that amount." But, taking it as the terms upon which the compensation was eventually to be equalized, it could only apply to the years' work as a whole. The month's salary was not made to depend upon the amount of sales made during that month. If plaintiff during the six months had sold $50,000 worth of goods he could not recover commission at the rate specified in excess of $250 per month, as his sales had not reached the limit that would entitle him to commissions in excess of his salary, and the converse is also true. His salary for one month is not reduced by reason of a shortage of sales during that month. The whole controversy in arriving at the agreement was that plaintiff insisted upon having $250 per month and the contract made no provision that it was to be less. unless the sales for the year should be less than $66,000. There was no variance between the allegation of the complaint and the contract offered in evidence.

4. This disposes of the questions relating to the admissibility of evidence and the motion for judgment of nonsuit. A motion for a new trial was based upon surprise in the fact that plaintiff sought to prove fraud in the execution of Exhibit No. 2, and that defendant's interrogatories Nos. 52, 53, and 54 to McRoy, whose evidence was taken by deposition, were stricken out, which defendant insists precluded him from meeting the evidence of fraud in the execution of Exhibit 2. But the questions stricken out only called for the opinion of the witness as to whether there was any mistake or fraud and called for no statements of fact. In his testimony McRoy gives the whole history of the making of

both the exhibits, and defendant was not prejudiced by the absence of the three questions stricken out, and the motion was properly denied.

5. The argument of counsel that the contract is not a severable one is not in point in this action. If there be a payment specified in the contract, which is earned and due, the contract is severable to the extent that such payment may be sued for at once. The cases cited by counsel relate to actions to recover damages for breach of a contract. This action is not for damages for a breach, but to recover payment for services admitted to have been rendered. There is no suggestion in the pleadings of any breach of the contract.

Judgment of the lower court is affirmed.

AFFIRMED: REHEARING DENIED.